163 U.S. 499 (1896)
UNITED STATES
v.
ALLEN.
No. 887.
Supreme Court of United States.
Submitted May 8, 1896.
Decided May 25, 1896.
CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.
Mr. Assistant Attorney General Whitney for plaintiffs in error.
Mr. L.E. Payson and Mr. J.F. Evans for defendant in error.
MR. JUSTICE WHITE delivered the opinion of the court.
The defendant in error brought his action against the United States in the District Court of the United States for the Northern District of California to recover the amounts of certain alleged drawbacks of duty on importations of bituminous coal, which, in February, 1891, were supplied as fuel to the steamer Humboldt, a vessel of the United States regularly engaged in the coasting trade between sundry ports in northern California. Tender of compliance with the regulations promulgated by the Secretary of the Treasury, under the authority of the tariff act of March 3, 1883, to obtain the allowance and payment of such drawbacks was averred, and it was alleged that the surveyor of the port and other government officials declined to recognize the existence of a right thereto. A demurrer to the complaint was overruled, 52 Fed. Rep. 575, and, subsequently, an answer was filed taking issue thereon. Upon hearing on the merits a judgment was rendered in favor of the *500 plaintiff, which judgment was subsequently affirmed by the Circuit Court of Appeals for the Ninth Circuit. 15 U.S. App. 252. Thereupon a writ of certiorari was allowed and the cause was brought here for review.
The right to the alleged drawbacks is grounded upon the second proviso of section 25 of the tariff act of 1890, which it was alleged continued in force the following provision of the tariff act of March 3, 1883, c. 121, 22 Stat. 488, 511:
"Coal, bituminous and shale, seventy-five cents per ton of twenty-eight bushels, eighty pounds to the bushel. A drawback of seventy-five cents per ton shall be allowed on all bituminous coal imported into the United States which is afterwards used for fuel on board vessels propelled by steam which are engaged in the coasting trade of the United States, or in the trade with foreign countries, to be allowed and paid under such regulations as the Secretary of the Treasury shall prescribe."
By section 10 of the shipping act of June 19, 1886, c. 421, 24 Stat. 81, the benefits of this provision were limited to vessels of the United States.
Section 25 of the tariff act of October 1, 1890, c. 1244, 26 Stat. 617, above referred to, reads as follows:
"25. That where imported materials on which duties have been paid, are used in the manufacture of articles manufactured or produced in the United States, there shall be allowed on the exportation of such articles a drawback equal in amount to the duties paid on the materials used, less one per centum of such duties: Provided, That when the articles exported are made in part from domestic materials the imported materials, or the parts of the articles made from such materials, shall so appear in the completed articles that the quantity or measure thereof may be ascertained: And provided further, That the drawback on any article allowed under existing law shall be continued at the rate herein provided. That the imported materials used in the manufacture or production of articles entitled to drawback of customs duties when exported shall in all cases where drawback of duties paid on such materials is claimed, be identified, the quantity of such materials *501 used and the amount of duties paid thereon shall be ascertained, the fact of the manufacture or production of such articles in the United States and their exportation therefrom shall be determined, and the drawback due thereon shall be paid to the manufacturer, producer or exporter, to the agent of either or to the person to whom such manufacturer, producer, exporter or agent shall in writing order such drawback paid under such regulations as the Secretary of the Treasury shall prescribe."
The tariff act of 1890 combined two paragraphs of the act of 1883 relating to coal, into one, (No. 432,) and omitted the drawback provision above referred to. Said paragraph 432 reads as follows (26 Stat. 600):
"432. Coal, bituminous and shale, seventy-five cents per ton of twenty-eight bushels, eighty pounds to the bushel; coal slack or culm, such as will pass through a half inch screen, thirty cents per ton of twenty-eight bushels, eighty pounds to the bushel."
It is necessarily conceded that the omission of the drawback provision of the act of 1883 from this special paragraph obviously meant either that the drawback allowance was intended to be taken away, or that the intent was to provide for it elsewhere. If such provision is not found elsewhere in the act of 1890 it is clear, from the character of that act, that there was a repeal by implication of the drawback allowed by the earlier act, for, as was said by this court, speaking through Mr. Justice Harlan, in Tracy v. Tuffly, 134 U.S. 206, 223: "While it is true that repeals by implication are not favored by the courts, it is settled that, without express words of repeal, a previous statute will be held to be modified by a subsequent one, if the latter was plainly intended to cover the whole subject embraced by both, and to prescribe the only rules in respect to that subject that are to govern."
Is the contention of the defendant in error well founded that the drawback provision actually omitted in the act of 1890 was yet saved by the second proviso to section 25 of that act?
The trial court and the Circuit Court of Appeals held that this section provided in distinct terms for a drawback, first, *502 on all articles wholly manufactured from imported materials and thereafter exported; and, second, for a drawback on all articles made partly from imported materials and thereafter exported, thus covering every possible manufacture made in this country of foreign materials and subsequently exported, and that the proviso following, to wit: "That the drawback on any article allowed under existing law shall be continued at the rate herein provided," recognized the continued right to the drawback here claimed, as it was then allowed by an existing law.
But this construction is faulty. It necessarily has, as its basis, the assumption that the act of 1883 was considered by Congress in passing the act of 1890, as an "existing law" within the purview of these words as used in the act of 1890. But the act of 1883 was clearly superseded in all its parts, and intended so to be, by the latter act. A comparison of the two acts will make manifest the fact that Congress sought and designed to embody in the act of 1890 all the provisions of the act of 1883 which it was not intended should be eliminated and repealed. Thus, sections 2503 et seq. of the act of 1883, 22 Stat. 522, embody lengthy provisions regarding special exemptions of merchandise, works of art, imported materials intended for particular purposes, etc. All such provisions will be found reënacted in the act of 1890. 26 Stat. pp. 609, 611, 613 to 616, 648, etc.
The act of 1883, in so far as it related to duties on imports, contained only two provisions for drawback, one on salt, the other on bituminous coal. The drawback on salt was reenacted in the act of 1890 in the same situation as found in the act of 1883, but the provision as to bituminous coal, as already stated, was omitted and no substitute appears. Under the circumstances, the act of 1883 cannot be regarded as "existing law," as that expression is employed in the proviso in question. Congress having altered the form of the paragraph of the act of 1883 relating to bituminous coal, not only by omitting the provision as to drawback, but by combining two paragraphs of the act of 1883 into one in the act of 1890, its attention was necessarily directed to the necessity *503 of providing elsewhere for the drawback if it was designed to retain it. It made special provision (par. 328) for a 99 per cent drawback on imported tin plate used in the manufacture of cans, etc., for export, and certainly the necessity for an equally unambiguous provision with reference to bituminous coal would have suggested itself if it was contemplated that such drawback should continue. It is altogether improbable that Congress couched an intention to continue a drawback on coal in the ambiguous language employed in the proviso which is relied on.
An added circumstance weighing against the construction that the proviso was intended to continue the drawback in question is the fact that the rule laid down in the proviso for determining the amount of drawback evidently had relation to articles manufactured from "materials," and not to a raw material like coal, in the production of which no materials are used which enter into and form a part of the product. The proviso requires that the drawback shall be continued "at the rate herein provided," and that rate is a sum "equal in amount to the duties paid on the `material used,' less one per centum of such duties."
We are not called on now to determine whether the proviso in question should be limited solely to exported articles of domestic manufacture composed in whole or in part of foreign materials, or whether the provision has reference to the general and specific sections authorizing drawbacks contained in Chapter 9, Title XXXIV, of the Revised Statutes, or to special acts authorizing drawbacks, if any such there be. The argument that the language of the proviso which is here relied on must be held to mean nothing unless it be considered as continuing the drawback on coal, is without merit, for non constat that the language was employed, from abundance of precaution, to deny, in advance, the theory that the proviso repealed every drawback arising from general legislation outside of the act of 1883. It is, moreover, apparent, taking the most favorable view of the claim asserted, that it is extremely doubtful whether the construction of this second proviso of the tariff act of 1890, upon which the finding in *504 favor of the defendant in error was predicated, was justified. Such being the case, it results that the doubt engendered must be resolved against him. The claim advanced is that an exceptional privilege or exemption from the general operation of a law exists in favor of the defendant in error. Such a claim is within the general principle that exemptions must be strictly construed, and that doubt must be resolved against the one asserting the exemption. Schurtz v. Cook, 148 U.S. 397; Keokuk & Western Railroad v. Missouri, 152 U.S. 301, 306.
It results from these considerations that the judgments of both the District Court of the United States for the Northern District of California and the Circuit Court of Appeals for the Ninth Circuit were erroneous. Both the judgments must, therefore, be
Reversed, and the cause be remanded to the District Court of the United States for the Northern District of California, with directions to enter judgment in favor of the United States, with costs.
MR. JUSTICE PECKHAM dissents.