Nott, Ch. J.,
delivered the opinion of the court:
The position of the claimant is in substance this:
The general purpose of the legislation involved in this suit is the imposition of customs duties which, incidentally, shall benefit domestic manufacturers and producers and their workmen. That benefit can accrue only in one way — by increasing the market price of articles manufactured or produced. But that benefit manifestly can extend no farther than the domestic markets of the country. So soon as the manufactured article seeks a foreign market the action of the tariff is reversed, and what was a benefit becomes an injury and the person helped is the foreign manufacturer and not the American. In the foreign market the American manufacturer labors under three disadvantages — he has paid greater prices *120 for domestic materials; he has paid duties on imported materials; he has paid higher wages to his workmen. Hence in the foreign market he can not compete with the foreign manufacturer, who, manufacturing at less cost, can undersell hiin. To that extent protective legislation benefits the foreign manufacturer.
The true constituents of a system strictly protective must be that the American manufacturer shall manufacture from American products for the American market, and thereby help the American producer as well as himself. But the overproduction of modern machinery has of late years overstocked the home market, and Congress have sought by appropriate legislation to bring foreign markets within the reach of American manufacturers. To that end the legislative policy has been to allow the home manufacturer to manufacture his articles out of imported materials coming into the country practically duty free. It is manifest that if this favorable legislation is intended to put the American manufacturer on an equal footing with his foreign competitor in foreign markets it must be as broad as the articles which he manufactures, or, rather, as broad as the imported materials which he uses, so that anything and everything which enters into the cost of production shall be absolutely free from the additional cost of customs duties.
In the case now before us it is obvious that the manufacturer was compelled either to use bottles manufactured in this country or to import bottles upon which he must paj duties. As a matter of fact, he resorted to the latter alternative. He claims that these bottles are materials used in the manufacture of bottled beer; and it is but just to say that he shows that this beer is manufactured expressly for bottling and for exportation; that it can not be preserved and exported in aiy other way, and that from one point of view the bottle is as much an element of the intended product as the peculiar kind of beer which it contains. The manufacturer maintains that these duties will preclude him from competing in foreign markets with foreign brewers, contrary to what he believes to bo the legislative intent, because he can not manufacture this kind of beer for exportation without bottles, and can not afford to pay duties on bottles when his competitors do not.
*121 Nevertheless, if the intention was to put the American mán-ufacturer upon an equal footing with the foreign manufacturer in foreign markets, the legislation of Congress has been imperfect and incomplete, and the courts, moreover, have deemed themselves confined to the words of the statutes when ascertaining the legislative intent.
The significant words of this act are “that where imported materials on which duties have been paid are used in the manufacture of articles” “there shall be allowed on the exportation of such articles a drawback equal in amount to the duties paid on the materials used.” {Act 1st October, 1890, 26 Stat. L., p. 617, § 25.)
In a case of a somewhat similar character this court held that shooks imported to be used in the manufacture of boxes were not materials within the intent of the statute, but a finished product. (Tidewater Oil Co.'s Case, 31 C. Cls. R., 90.)
In the same case on appeal Mr. Justice Brown elucidates the different meanings which maybe given to the word iimaterials,” and he points out that logs are manufactured into boards and boards are fashioned into boxes; that the steel spring of a watch is made from iron ore, but by a number of processes or transformations, and that each successive step is a distinct process bringing forth an article which receives a new and different name, and he draws the general conclusion “that the finished product of one manufacturer becomes the material of the next in rank.” (171 U. S. R., 210-216.)
In the case of the United States v. Allen (163 U. S. R., 499) the court held that the drawback authorized by this statute does not extend to imported coal, considered as an article for consumption, and the reasoning of the court leads to the conclusion that the right to a drawback must rest on an exported “article” composed, in whole or in part, of imported “materials.” It may be true that the bottles are as essential in the manufacture of bottled beer as the barley and hops of which the beer is made, but the barley and hops when they are imported are not beer, while the bottles are bottles, and as complete when the American brewer buys them as when they are exported. We may infer from the decisions that if he had imported glass, and manufactured the glass into bottles, he would have had a good claim for drawback as to any duties *122 which had been paid upon the glass; but it must be held, under the authorities cited, that bottles are a finished product, and not “materials used” in that combination which is the subject or basis of the present suit.
The judgment of the court is that the claimant recover the drawback on barley and hops set forth in the foregoing findings, to wit, the sum of $2,371.35.