THE MENGEL CO. *v.* UNITED STATES (No. 3583)[1]

[1] T. D. 46232.

400

United States Court of Customs and Patent Appeals, January 23, 1933

De Vries, Crawford & McCook (Jesse Crawford of counsel) for appellant.
Charles D. Lawrence, Assistant Attorney General (William H. Futrell and Ralph Folks, special attorneys, of counsel), for the United States.

[Oral argument December 9, 1932, by Mr. Crawford and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court overruling appellant's protest against the decision of the collector of customs disallowing drawback of duties upon certain mahogany lumber exported after the enactment of the Tariff Act of 1930, said lumber having been manufactured from logs imported and assessed for duty under the Tariff Act of 1922.

Importer's claim is based upon section 313 of the Tariff Act of 1922, the pertinent portions of which read:

SEC. 313. That upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties, * * *. The imported merchandise used in the manufacture or production of articles entitled to drawback of customs duties when exported shall, in all cases where drawback of duties paid on such merchandise is claimed, be identified, the quantity of such merchandise used and the amount of duties paid thereon shall be ascertained, the facts of the manufacture or production of such articles in the United States and their exportation therefrom shall be determined, and the drawback due thereon shall be paid to the manufacturer, producer, or exporter, * * * under such regulations as the Secretary of the Treasury shall prescribe.

No limit of time was fixed in said act within which the exportation had to be made in order to entitle the qualified person to receive the drawback provided, and, in the case of *United States* v. *Comey Brook-*

*lyn Co.*, 16 Ct. Cust. Appls. 248, T. D. 42843, this court, affirming a decision of the United States Customs Court, held that the Secretary of the Treasury had no authority to fix a time limit by regulation.

The mahogany logs were imported through the port of New Orleans, La., in the months of February and September, 1927. The lumber manufactured from the logs was exported from the same port in the months of October, 1930, and February, 1931, respectively. The record does not disclose definitely the time or times when the actual manufacture took place. It is a fair assumption, we think, that the logs were withdrawn from customs custody and the duty, levied upon same under the Tariff Act of 1922, paid prior to the effective date of the Tariff Act of 1930. The exportations were more than three years subsequent to the dates of importation.

Section 313 of the Tariff Act of 1930 contains much matter not found in section 313 of the 1922 act, but retains the language:

\* \* \* Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties, \* \* \*.

This, it will be observed, is an exact repetition of the language quoted, *supra*, from the Tariff Act of 1922, but there appears as a new provision in the 1930 act, being paragraph (h) of said section 313, the following:

(h) TIME LIMITATION ON EXPORTATION.—No drawback shall be allowed under the provisions of this section or of section 6 of the Act entitled "An Act temporarily to provide revenue for the Philippine Islands, and for other purposes," approved March 8, 1902 (relating to drawback on shipments to the Philippine Islands), unless the completed article is exported, or shipped to the Philippine Islands, within three years after importation of the imported merchandise.

Section 651 of the Tariff Act of 1930 is entitled "Repeals," and subdivision (a) thereof and the pertinent part of its subparagraph (1) read:

(a) SPECIFIC REPEALS.—The following Acts and parts of Acts are repealed, subject *to the limitations provided in subdivision* (c) (Italics ours):

(1) The Tariff Act of 1922, \* \* \*.

Under the subtitle "Specific Repeals" three other acts, not here relevant, are named, and then follows subdivision (b) generally repealing "All Acts and parts of Acts inconsistent with the provisions of this Act."

Next in order is subdivision (c), alluded to in (a), *supra*, the pertinent portion of which reads:

(c) RIGHTS AND LIABILITIES UNDER ACTS REPEALED OR MODIFIED.—The repeal of existing laws or modifications or reenactments thereof embraced in this

Act shall not affect any act done, or any right accruing or accrued, * * * prior to such repeal, modifications, or reenactments, but all liabilities under such laws shall continue and may be enforced in the same manner as if such repeal, modifications, or reenactments had not been made. * * *

The contentions of the importer are, in substance, that the time limitation of three years in paragraph (h) of section 313 of the Tariff Act of 1930, *supra,* was not intended by Congress to have a retrospective operation; that in the drawback provision of section 313 of the Tariff Act of 1922, *supra,* the Government declared a policy establishing certain rights and liabilities which became vested and fixed upon performance being begun thereunder, thus establishing contract relations; that rights accrued or accruing under the Tariff Act of 1922 were not destroyed or even restricted by section 313 (h) of the Tariff Act of 1930, *supra,* but were affirmatively preserved in their entirety under the provisions of section 651 (c) of that act, and that the drawback law is not to be construed as the grant of a privilege within the usual meaning of that term.

The contentions of the Government are, that importer's alleged right to drawback did not accrue until after the Tariff Act of 1930 went into effect, and hence the three-year limitation controls; that the importer did not comply with the provisions of section 313 (h) of the Tariff Act of 1930 by exporting the lumber within three years from the date of its importation; that no rights had become vested in the importer which might nullify the three-year limitation, and that the right to secure drawback upon exportation is a privilege which Congress may grant or revoke at any time.

The First Division of the Customs Court, Judge Brown dissenting, overruled the protest. The prevailing opinion of that court holds, in substance, that the question of the retroactiveness of the three-year limitation is not involved; that the benefit of drawback is a privilege and not an absolute right, under the doctrine announced by the Supreme Court of the United States in the cases of *United States v. Allen,* 163 U. S. 499, and *Swan & Finch Co.* v. *United States,* 190 U. S. 143, and in certain official opinions of the Attorney General of the United States; that no inherent vested right to drawback upon the product or products which might be made from the logs inured to the importer upon importation, and that, as a privilege, the right to drawback was subject to the conditions of the law in operation at the time of exportation, that is, the Tariff Act of 1930.

In his dissenting opinion Judge Brown declares that the question of whether drawback is a privilege is not involved in this case and further holds that the decision of this court in *Akeroyd* v. *United States,* 19 C. C. P. A. (Customs) 249, T. D. 45341, construing subdivision (c) of section 651 of the Tariff Act of 1930, is directly in point, particularly in view of the fact that the Supreme Court of the United States refused certiorari thereon.

Upon the trial of the case in the Customs Court there was filed a stipulation of facts by which counsel for the respective parties agreed that appellant had complied with all the regulations in force at the time of the exportation except the regulation as to time of shipment (three years), which regulation, in June, 1928, had been held void by this court in the *Comey Brooklyn Co.* case, *supra.*

In other words, as we understand the stipulation, under the facts there shown, had the lumber been exported before the enactment of the Tariff Act of 1930, even had such exportation been more than three years after the date of importation of the logs, appellant would have been entitled, under the act of 1922, to the drawback claimed, and the issue presented grows solely out of the three-year limitation which Congress fixed in the language quoted, *supra,* from section 313 of the Tariff Act of 1930.

It will be noted from an analytical examination of said paragraph (h), section 313 of the Tariff Act of 1930, that it is limited in its application to two classes of drawback.

First, that "allowed under the provisions *of this section.*" (Italics ours.)

Second, that allowed under section 6 of the Philippine Revenue Act of March 8, 1902.

It would seem that any drawbacks provided in other sections of the act or by other laws, if any, are not intended to be affected by the limitations prescribed in section 313, since the latter by its terms limits the limitation to the drawbacks "allowed under * * * this section," and those under the Philippine act referred to.

It is to be borne in mind that section 313 in its entirety is, from the legislative standpoint, a new enactment. The fact that it carries, in part, the precise language of prior tariff acts does not alter this legal situation.

Each and every provision of the Tariff Act of 1922 is repealed by section 651, Tariff Act of 1930, but such repeal is subject "to the limitations provided in subdivision (c)" thereof, *supra.*

It seems clear that whatever merchandise may be both imported and exported under the 1930 act is subject to that act alone, but that act within itself does specifically retain certain "Rights and liabilities under acts repealed or modified," which includes the Tariff Act of 1922

This court has found it necessary in a number of cases to construe sections of respective prior tariff acts, reading substantially (in the case of the 1922 act, precisely) as does subdivision (c) of the 1930 act, but the exact point here at issue was not presented in any of those cases, practically all of which are cited in the *Akeroyd* case, *supra.* Those cases generally presented questions of procedure. In the said *Akeroyd* case, *supra,* the one general question at issue related to, in the final analysis, the timeliness of a protest. By the provisions

of the tariff act of 1913 a period of only 30 days from the date of the collector's liquidation was allowed for filing protest. By the terms of the 1922 act a period of 60 days was allowed. Merchandise was imported under the Emergency Tariff Act of 1921, to which act the administrative provisions of the 1913 act were applicable. Classification was made by the collector at the rate provided in the emergency act, but liquidation did not take place until after the passage of the Tariff Act of 1922. The importer filed protest 53 days after liquidation and insisted that the 60-day provision of the Tariff Act of 1922 was applicable. This court, sustaining the decision of the Customs Court (except that we held that the case should have been dismissed for lack of jurisdiction), held that as to any liabilities of the Government to the importer arising under said prior acts the importer's remedial procedure must be had under the act of 1913 and not under the act of 1922. This conclusion was arrived at under the construction which this court and the court below gave to section 641 of the Tariff Act of 1922, which was in the exact language now before us as subdivision (c), section 651, *supra*.

In that case we quoted with approval from a former opinion of this court in the case of *Woolworth Co.* v. *United States*, 13 Ct. Cust. Appls. 176, T. D. 41037, wherein it was said:

> The first two clauses in section 641, supra, are not limited by any such language as "and suits and proceedings for causes arising or acts done prior to said date," but, on the contrary, they are followed by the clause, *"but all liabilities under said laws shall continue and may be enforced in the same manner* as if said repeal or modifications had not been made." (Italics in original.) The latter clause is rather one of extension than of limitation, and we think that its use in connection with the preceding clauses in the section, when read in connection with the administrative provisions of the Tariff Act of 1922, clearly indicates that Congress intended that all *liabilities* created by the entry of imported merchandise under the tariff act of 1913 *should continue and be enforced* under the provisions of that act * * * except as otherwise expressly provided; and as the existence of a *liability* necessarily involves the existence of a *correlative right, all such rights and liabilities are preserved.* * * * (Italics ours.)

The doctrine of the *Akeroyd* case, *supra*, and of the cases there cited upon the issue, we regard as applicable to the case at bar if it be found that the liability of the Government to appellant for drawback (a liability which apparently would have existed had the manufactured products been exported before the effective date of the Tariff Act of 1930—June 18, 1930) was, by the provisions of subdivision (c), section 651, Tariff Act of 1930, *supra*, continued in force, so that the limitation of three years fixed in section 313 (h) thereof, *supra*, does not apply.

As we view the issue, its decision does not turn upon the question of whether the right to export is a privilege in the technical legal sense of that term and does not call for any expression upon that question. It may be said in passing that drawbacks, or the equivalent of draw-

backs, upon merchandise imported and manufactured into products exported, have been provided in tariff acts and laws of the United States from the very beginning of the Government. The first Congress provided them, and it is a policy as well fixed in our system of government as is the tariff system itself. The object is obvious and, so far as we are aware, the wisdom of the policy is, and has always been, practically universally conceded.

However this may may be, it is certainly the law that even a privilege, while not always an absolute right in itself, may, in a sense, form the basis of a legal right. If a matter be a privilege in the technical legal sense of the term, it is to be strictly construed in any action wherein it is involved, but strict construction does not mean absolute destruction. Conceding, without holding, that the drawbacks provided in the Tariff Act of 1922 constituted a privilege in the strict legal sense of the term, nevertheless, if liabilities of the Government and rights of parties growing out of same were continued by an exception to the repealing language of the act which repealed that law, then the privilege itself, or at least the rights based thereon, continued.

The law which creates a privilege is to be strictly construed in its application, but this does not mean that the law is to be wiped out by the courts.

Had the Congress desired to make the three-year limitation applicable to importations that had been brought into the United States under the unlimited (as to time of export) provision of section 313 of the Tariff Act of 1922, this might have been easily accomplished by the use of a few additional words in the act of 1930, or probably by simply omitting or altering subdivision (c) of section 651, *supra*. If vested rights had already inured under the act of 1922 which Congress could not destroy by legislation the courts would doubtless so declare upon a proper showing in a proper case.

But that question is not now before us. As we view the statute Congress did not endeavor to take away any accruing or accrued right, whether a right *per se* or a right based upon a privilege, by the language of section 313 of the Tariff Act of 1922, under which importer claims, because, by the terms of the pertinent parts of section 651, heretofore quoted, such rights were expressly preserved.

The Government brief quotes the definition of "vested right" given by the Encyclopedia of Law, volume 40, at page 199, and argues at length that appellant here had no "vested" right. We do not think that the question of vested right, in any technical legal sense of "vested," is here involved. The precise pertinent language of section 651 (c) seems to us to be:

   *  *  *  The repeal [of the Tariff Act of 1922 and other acts]  *  *  *  shall not affect  *  *  *  any right accruing or accrued,  *  *  *  but all liabilities

under such laws shall continue and may be enforced in the same manner as if such repeal, modifications, or reenactments had not been made. * * *

Surely this is intended to mean and does mean the rights of importers as well as rights of the Government and liabilities of the Government as well as liabilities of importers.

In the *Allen* case and the *Swan* case, *supra*, the Supreme Court had no such language as that last above quoted before it for construction, nor was the merchandise there involved manufactured to be exported. It was coal consumed in use on certain vessels, and the provisions allowing drawback were of a special nature, differing from the "export drawback" provisions which have been for so long carried in the general laws of the United States.

The Attorney General (or rather it was the Solicitor General) of the United States, in the advisory opinion quoted from by the court below, 19 Op. Atty. Gen. 638, did not have before him either a state of facts or a statute, similar, upon the questions submitted to him, to that with which we are here dealing. The Attorney General was construing the then section 3019 of the Revised Statutes and was advising primarily as to the person or persons entitled to receive the drawback provided by that section, the section itself not defining such person.

It is true that the Attorney General there said, as quoted in the prevailing opinion of the court below:

The right to the drawback is at first inchoate and contingent, attaching to the materials after they have come into the country, but ripens into an absolute right of present enjoyment upon their export in manufactured form.

The court below held and Government counsel, in argument before us, maintains that the right not having *accrued* until exportation, no right existed in the case at bar because of the interposition of the three-year limitation in the act of 1930, effective before the exportation was actually made.

However, in the Tariff Act of 1930, Congress used the phrase "accruing or accrued." In view of this we think the construction of section 651 (c) insisted upon by the Government and adopted by the Customs Court is narrower than Congress intended.

Numerous steps were essential as prerequisites to the right to receive drawback under section 313 of the Tariff Act of 1922. In *Richards* v. *Bellingham Bay Land Co.*, 54 Fed. 209, 213, "accrued right" was defined, in effect, as one which can not be wholly taken away by statute, and "accruing right" as one that is "increasing, enlarging or augmenting."

The exact legal rights of appellant do not, under the wording of the statute, turn upon the narrow point of when his right to drawback became *accrued*. Consideration must be given to the term "*accruing*" as well.

Upon importation of the logs, at least a possibility of exportation of lumber sawed therefrom with the right to receive drawback upon such exportation came into existence. As successive steps, such as paying the import duty, manufacturing the logs into lumber, complying with the legal regulations, and making the requisite export entries, were taken, the appellant was moving toward the establishment of an accrued right to the drawback. It was, in our opinion, an accruing right under section 313 of the Tariff Act of 1922, which became an accrued right upon the actual exportation. Congress, we think, not only made no effort to take away any accrued rights but expressly preserved them and, going further, expressly preserved accruing rights.

Another opinion of the Attorney General (or of the Solicitor General, approved by the Attorney General) of the United States, referred to by the court below, was that of February 16, 1901, 23 Op. Atty. Gen. 395. A cargo of linseed was brought into port while the Tariff Act of 1890 was in force. There was an express provision in that act that no drawback should be allowed on linseed-oil cake made from imported seed. The importation alluded to was placed in warehouse and was not entered for consumption until after the passage of the Tariff Act of 1894, which did make general provision for drawback. It *was assessed for duty under said act of 1894.* The Attorney General held, in effect, that the importation was subject to the liabilities, and the importer entitled to the rights, fixed by the act under which it was *imported* and under which duties were paid. This opinion does no violence to the views here expressed as to the instant controversy.

The Attorney General had no occasion under the facts there submitted to him to construe any such statute as is here involved.

We have not deemed it necessary to pass upon the question of the retroactiveness of the involved statute, since, as we view it, there was no intent to make it retroactive evidenced by the act. Neither do we find it necessary here to concern ourselves with the contention of appellant as to contractual relations being established.

For the reasons stated we feel that the judgment of the Customs Court is *erroneous* and same is *reversed.* The cause is *remanded,* to the end that further proceedings may be had not inconsistent with this decision.

BLAND, Judge, dissents.