**BROWN & WILLIAMSON TOBACCO CORP. v. UNITED STATES.**

No. 11568.

United States Court of Appeals, Sixth Circuit.

Feb. 11, 1953.

---

Louis Seelbach, Louisville, Ky., Louis Seelbach and Eugene B. Cochran, Louisville, Ky., on the brief (Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, Ky., of counsel), for appellant.

. Harland F. Leathers, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen. and Harland F. Leathers, Department of Justice, Washington, D. C., David C. Walls, U. S. Atty. and Charles F. Wood, Asst. U. S. Atty., Louisville, Ky., on the brief, for appellee.

Before ALLEN, MARTIN and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from a judgment of the District Court awarding the plaintiff the sum of $220,000 less credit for taxes, with interest at the rate of 6% per annum from July 10, 1947.

The suit was instituted by plaintiff[1] claiming the amount of $220,000 as excessive profits realized by the defendant in the performance in the year 1944 of contracts entered into between the defendant and the Federal Surplus Commodities Corporation and the Commodity Credit Corporation, agencies of the United States Government.

On March 11, 1944, the defendant and the Federal Surplus Commodities Corporation entered into three Lend Lease contracts. In the same year the defendant and the Commodity Credit Corporation entered into two war contracts. Each of the five contracts contained a provision authorizing renegotiation "in the same manner that renegotiation by certain named governmental departments is authorized and directed by Section 403 of the Sixth Supplemental National Defense Appropriation Act (Public 528, 77th Congress), as amended * * *." the Renegotiation, Act. This provision was necessary because neither the Federal Surplus Commodities Corporation nor the Commodity Credit Corporation was included in the departments or agencies named in the Renegotiation Act as amended, 50 U. S.C.A.Appendix, § 1191(a) (1), and hence no express statutory authority existed to renegotiate contracts made with these

---

1. The parties will be referred to as in the court below.

agencies. The plaintiff alleged that in renegotiation proceedings before the Contracts Dispute Board of the Commodity Credit Corporation the Board found that defendant had realized under the five contracts described excessive profits amounting to $220,000, which amount, upon notice, defendant refused to pay. The answer denied certain allegations of the complaint and set up affirmative defenses in Paragraphs II and III. The plaintiff moved to strike Paragraphs II and III from the answer and the District Court sustained this motion. The defendant declined to proceed further and the court entered judgment for the plaintiff.

Paragraph II of the answer stated that in addition to the five contracts listed in the complaint the defendant had entered into numerous other contracts with departments and agencies of the United States Government under which it sold merchandise during the year ended December 31, 1944, which other contracts were subject to renegotiation by the War Contracts Price Adjustment Board under the provisions of Section 403 of the Renegotiation Act as amended. This paragraph of the answer also stated that, prior to the time the Contracts Dispute Board of the Commodity Credit Corporation notified defendant that it would renegotiate the five contracts listed in the complaint, the War Contracts Price Adjustment Board had notified defendant that it would renegotiate the contracts between defendant and the departments and agencies of the United States for the year ended December 31, 1944, and that the defendant had submitted to the War Contracts Price Adjustment Board all data relative to its operations for the year in question, including operations under the five contracts listed in the complaint. The defendant did not deny its refusal to pay the excessive profits determined by the Contracts Dispute Board but stated that it protested the renegotiation of the five contracts listed in the complaint after renegotiation of these contracts had been submitted to determination by the War Contracts Price Adjustment Board.

In Paragraph III of the answer the defendant alleged that it advised the Contracts Dispute Board of the volume of sales, expenses, profits and percentage of profits made by the defendant during the year in question; that one of the rights given the defendant by the provisions of the contracts listed in the complaint was the right to have all of its renegotiable contracts renegotiated together for the year involved and that the renegotiation of the five contracts by the Contracts Dispute Board as a separate part of the defendant's business was a violation of Section 403 of the statute.[2]

■■ The motion to strike a pleading is for some purposes equivalent to or in the nature of a demurrer. Kowaleski v. Pennsylvania R. R. Co., 3 Cir., 103 F.2d 827, certiorari denied 308 U.S. 556, 60 S.Ct. 95, 84 L.Ed. 467; Cheatham v. Wheeling & L. E. Ry. Co., D.C., 37 F. 2d 593. A motion to strike admits the well-pleaded allegations of the pleading asked to be stricken. Barnidge v. United States, 8 Cir., 101 F.2d 295. For the purposes of decision therefore we accept as true the allegation in the answer that, prior to renegotiation by the Contracts Dispute Board of the five contracts listed in the complaint, all of the contracts of the defendant with the departments and agencies of the Federal Government for the fiscal year of 1944 including the five contracts in controversy were submitted

---

2. The War Contracts Price Adjustment Board was created under the Renegotiation Act February 25, 1944, 58 Stat. 85, and abolished March 23, 1951, 65 Stat. 23.

The Federal Surplus Commodities Corporation was originally the Federal Surplus Relief Corporation. In 1935 the name was changed to Federal Surplus Commodities Corporation by amendment to its charter. April 2, 1940, 54 Stat. 1232, it became a part of the Surplus Marketing Administration, an agency of the Department of Agriculture.

The Commodity Credit Corporation, created by Executive Order October 16, 1933, was transferred to the Department of Agriculture July 1, 1939, 53 Stat. 1429. It was made an agency of the Department of Agriculture June 29, 1948, 62 Stat. 1070.

to the War Contracts Adjustment Board and considered in the aggregate by that Board.

But the significant questions are before us without clarification of the facts. The record does not include the orders of the War Contracts Adjustment Board and the Contracts Dispute Board which defendant claims are inconsistent and conflicting, nor is any explanation made of the alleged difference in the orders.

Partly because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts. Colorado Milling & Elevator Co. v. Howbert, 10 Cir., 57 F.2d 769. It is a drastic remedy to be resorted to only when required for the purposes of justice. Batchelder v. Prestman, 103 Fla. 852, 138 So. 473; Collishaw v. American Smelting & Refining Co., 121 Mont. 196, 190 P.2d 673. The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy. Samuel Goldwyn, Inc., v. United Artists Corporation, D.C., 35 F.Supp. 633; Wooldridge Mfg. Co. v. R. G. La Tourneau, Inc., D.C., 79 F.Supp. 908.

We think that the District Court erred in striking the affirmative defenses of the answer. It has not been shown that these defenses have no relation to the controversy.

Section 403(c) (1) of the Renegotiation Act reads in its material part as follows:

"The Board shall exercise its powers with respect to the aggregate of the amounts received or accrued during the fiscal year (or such other period as may be fixed by mutual agreement) by a contractor or subcontractor under contracts with the Departments and subcontracts, and not separately with respect to amounts received or accrued under separate contracts with the Departments or subcontracts, except that the Board may exercise such powers separately with respect to amounts received or accrued by the contractor or subcontractor under any one or more separate contracts with the Departments or subcontracts at the request of the contractor or subcontractor."

This provision imposes a mandatory obligation on the Board. In determining excessive profits it must take into consideration the aggregate of the contracts made by the contractor with the Departments for the fiscal year.

Plaintiff contends that this provision is not mandatory because the statute authorizes the secretary of each department to renegotiate contracts subject to the Act, either separately or in a group, and Section 403(k) of the Amendment of 1944, 58 Stat. 90, retains this power in the secretary.

This contention is not supported by the history of the legislation. The Renegotiation Act was passed in 1942, 56 Stat. 245. This enactment placed the charge and control of renegotiations in the secretary of the department, Section 403(c). In the same year the statute was amended, 56 Stat. 982, and under the amendment the secretary of the department in exercising his powers of renegotiation, p. 983, was permitted in his discretion to renegotiate contracts either in a group or separately. Plaintiff contends that this authority still exists in the secretary and that the Contracts Dispute Board has the authority of the secretary.

But all contracts involved here were executed after the passage of an Amended Renegotiation Act, 58 Stat. 78, which completely replaced Section 403(c) of the Act of 1942.

The enactment clause of the amending Act, 1944 reads as follows:

"Section 403, as amended, of the Sixth Supplemental National Defense Appropriation Act, 1942, is amended to read as follows:"

A complete enactment then follows covering the subject matter of Section 403 as amended, making many changes. This clearly meant that Section 403 as amended in 1944 was a different statute from the Act of 1942 with its amendments. The Congress.

demonstrated by this new enactment that it intended to cover the whole subject embraced in the original Section 403, the amendment of 56 Stat. 982, and the amendments of 57 Stat. 347 and 564. As the 1944 amendment, 58 Stat. 78, was intended as a substitute for Section 403 of the original Act as amended, the amendment effected a repeal by implication of the original section as amended. Tracy v. Tuffly, 134 U.S. 206, 10 S.Ct. 527, 33 L.Ed. 879; District of Columbia v. Hutton, 143 U.S. 18, 27, 12 S.Ct. 369, 36 L.Ed. 60; United States v. Allen, 163 U.S. 499, 501, 16 S.Ct. 1071, 41 L. Ed. 242; Gibson v. United States, 194 U.S. 182, 192, 24 S.Ct. 613, 48 L.Ed. 926; The Paquete Habana, 175 U.S. 677, 20 S.Ct. 290, 44 L.Ed. 320. In the 1944 statute the provision giving the secretary power to renegotiate was omitted. The powers of the secretary there described in no way include the power of renegotiation, which is delegated entirely to the Board. Section 403(c) (1, 2). Moreover, the power of the Board is limited by the new and mandatory provision that the Board should exercise its authority with respect to the aggregate of the amounts received or accrued by a contractor "during the fiscal year." This legislative history indicates that the defenses stated in paragraphs II and III of the answer are relevant and should not be stricken.

The District Court did not hold that the power to renegotiate under the Amendment of 1944 still resided in the secretary. It held that the War Contracts Price Adjustment Board had no power to renegotiate any contract entered into by the Federal Surplus Commodities Corporation, and that the Contracts Dispute Board had identical powers and therefore the Commodity Credit Corporation should act with reference to the contracts entered into between it and the defendant. But Section 403(c) (1) contains no such exception. It covers the amounts received or accrued during the fiscal year under all contracts with the departments and requires that the aggregate be considered in determining whether excessive profits exist. It is undisputed that the defendant, apart from the five contracts which are the subject of the action here, had executed numerous war contracts with departments in 1944 after the enactment of amended Section 403(c). Moreover, each of the five contracts provided for renegotiation "in the same manner that renegotiation by certain named governmental departments is authorized and directed by Section 403 * * * (Public 528, 77th Congress), as amended. * * *" Thus the contracts incorporate by reference the statute, 58 Stat. 78, requiring consideration of receipts from all contracts for the fiscal year.

The cases cited by the plaintiff afford no help. They involve questions arising under the statute of 1942 or the amendments of 1943 and do not construe the present statute. Ring Construction Corporation v. Secretary of War, 8 T.C. 1070, appeal dismissed, 85 U.S.App.D.C. 386, 178 F.2d 714, which is relied on by the plaintiff upon the ground that the secretary renegotiated a single contract when two contracts were involved, is not in point. The first contract was executed prior to the enactment of the original Renegotiation Act of 1942.

On the incomplete record presented the court considers that the defendant on trial may raise valid issues of fact and law and that the motion to strike should not have been sustained. In view of this holding it is unnecessary to discuss the question of interest allowed by the court upon profits found to be excessive. The judgment is reversed and the case remanded with instructions to reinstate paragraphs II and III of the answer, and to proceed with the action in accordance with law.