# United States Court of Appeals for the Federal Circuit

---

**SHELL OIL COMPANY (C/O GULF COAST DRAWBACK SERVICES, INC.),**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee,*

---

2011-1531

---

Appeal from the United States Court of International Trade in Case No. 08-CV-0109, Judge Delissa A. Ridgway.

---

Decided: August 14, 2012

---

GEORGE M. CLARKE, III, Miller & Chevalier Chartered, of Washington, DC, argued for plaintiff-appellant. With him on the brief were DANIEL P. WENDT and MARY W. PROSSER. Of counsel on the brief was PETER A. LOWY, Shell Oil Company, of Houston, Texas.

TARA K. HOGAN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director,

and TODD M. HUGHES, Deputy Director.  Of counsel on the brief was RICHARD MCMANUS, Office of the Chief Counsel, Customs and Border Protection, United States Department of Homeland Security, of Washington, DC.

———————————

Before PROST, MOORE, and WALLACH, *Circuit Judges*.

WALLACH, *Circuit Judge*.

Plaintiff-Appellant Shell Oil Company ("Shell") appeals the decision of the Court of International Trade ("CIT") holding that Shell's drawback claims for Harbor Maintenance Tax ("HMT") and Environmental Tax ("ET") were time barred because the requests for drawback were not made within three years of exporting substitute finished petroleum derivatives as required by 19 U.S.C. § 1313(r)(1) (the "drawback statute").  *See Shell Oil Co. v. United States*, 781 F. Supp. 2d 1313, 1339-40 (Ct. Int'l Trade 2011).  Because we find that Shell failed to file timely the HMT and ET drawback claims at issue, we affirm.

## I.  BACKGROUND

### A.  Shell's Imports and the Drawback Statute

Between 1993 and 1994, Shell imported certain petroleum products ("imports at issue") upon which custom duties, taxes, and other fees were paid.[1]  During the same

———————————

[1] The taxes and other fees paid included HMT and ET.  HMT is a tax on port use imposed pursuant to the Water Resources Development Act of 1986, and ET is a tax imposed on crude oil received at a United States refinery and on petroleum products that enter into the United States for consumption, use, or warehousing.  *Shell Oil Co.*, 781 F. Supp. 2d at 1316 n.3.  Notably, in 1998, after a decade of enforcement, the Supreme Court held HMT unconstitutional as applied to exports because

period, Shell exported drawback[2]-eligible substitute finished petroleum derivatives. Subsequently, between January 1995 and August 1996, Gulf Coast Drawback Services, Inc., a customs broker to which Shell outsourced its drawback claim services, filed numerous substitution drawback claims with the U.S. Customs and Border Protection ("Customs") on Shell's behalf.[3]

In general, under the current statute,[4] Customs is required to provide a drawback of 99% of "any duty, tax, or fee imposed under Federal law upon entry or importation" of imported merchandise if that merchandise (or a "commercially interchangeable" substitute) is subsequently "exported, or . . . destroyed under customs supervision; and . . . is not used within the United States before such exportation or destruction . . . ." 19 U.S.C. §§ 1313(j),(p). The statute requires all drawback claims to be filed within three years of the date of exportation of the substitute merchandise, and claims that are not completed

the tax violated the Export Clause of the U.S. Constitution. *United States v. U.S. Shoe Corp.*, 523 U.S. 360, 363 (1998).

[2]    A drawback is defined as "the refund or remission, in whole or in part, of a customs duty, fee or internal revenue tax which was imposed on imported merchandise under Federal law because of its importation . . . ." 19 C.F.R. § 191.2(i).

[3]    This action involves seven claims and one partial claim for non-manufacturing substitution drawback associated with the imports at issue. *Shell Oil Co.*, 781 F. Supp. 2d at 1316.

[4]    The relevant language in the current drawback statute and its 1994 version, which applies in this case, are substantially the same unless otherwise indicated.

within the three-year period are "considered abandoned." *Id.* § 1313(r)(1). A complete drawback claim consists of "[a] drawback entry and all documents necessary . . . ." *Id.* During the time of Shell's imports, drawback eligibility of HMT and ET payments, which Shell now seeks, were heavily disputed. *See Aectra Refining & Mktg., Inc. v. U.S.*, 565 F.3d 1364, 1367 (Fed. Cir. 2009) ("*Aectra*") ("[Importer] admits that it was aware that Customs's position regarding the recoverability of . . . [Merchandise Processing Fee ("MPF")] and HMT was being actively challenged in 1997 and 1998.") (citations omitted).

## B. The 1999 Amendments

In 1999, Congress amended the relevant language of the drawback statute (the "1999 amendments") clarifying the scope of drawback available to include "any duty, tax, or fee imposed under Federal law because of . . . importation" in addition to customs duties. 19 U.S.C. §§ 1313(j),(p) (2000). To effectuate its newly clarified scope, the 1999 amendments suspended the statutory three-year period for the filing of drawback claims, but only as to "drawback claim[s] *filed within 6 months after the date of enactment* of [the 1999 amendments]" for which the statutory three-year period had expired. 1999 Trade Act, Pub. L. No. 106–36, § 2420(e), 113 Stat. 127, 179 (1999) (emphasis added). The effect of that language was to "creat[e] a six-month grace period in which otherwise untimely [drawback] claims could be *filed or re-filed* to obtain relief under the amended statute." *Aectra*, 565 F.3d at 1370-71 (emphasis added). As a result, importers were authorized to file stale drawback claims of "any duty, tax, or fee imposed under Federal law" paid on imported merchandise "because of its importation" between June 25, 1999 and December 25, 1999. *See* 19 U.S.C. § 1313(j) (2000).

## C.  The 2004 Amendments

Congress further amended the drawback statute after this court's decision in *Texport Oil Co. v. United States*, 185 F.3d 1291 (Fed. Cir. 1999) ("*Texport*").  In *Texport*, we interpreted the drawback statute's "because of . . . importation" language to preclude the payment of drawback on any "duty, tax, or fee that is assessed in a nondiscriminatory fashion against all shipments . . . ."  *Id.* at 1295-97.  Accordingly, we held MPF to be eligible for drawback because MPF "is explicitly linked to import activities."  *Id.* at 1296.  In addition, reasoning that HMT is "assessed in a nondiscriminatory fashion against all shipments utilizing ports," we held HMT to be ineligible for drawback.  *Id.* In a separate decision, we also held ET to be ineligible for drawback for similar reasons.  *George E. Warren Corp. v. United States*, 341 F.3d 1348, 1356 (Fed. Cir. 2003) ("*Warren*").

Responding to these decisions, in December 2004, Congress amended the drawback statute (the "2004 amendments").  Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. No. 108–429, § 1557(b), 118 Stat. 2434, 2579 (2004).  Congress made clear its intent to overturn *Texport* and eliminate the distinction between taxes and fees that discriminate against imports and those that do not.  *See* S. Rep. No. 108-28, at 173 (2003).  The 2004 amendments thus clarified eligibility of certain drawback claims, and thereafter, allowed drawback for any duty, tax, and fee imposed upon entry.  *Id.* § 1557(b), 118 Stat. at 2579.  In particular, the 2004 amendments applied only to any "drawback claim filed on or after [the date of the 2004 amendments' enactment] and to any drawback entry filed before that date if the liquidation of the entry [was] not final on that date."  *Id.* As such, unlike the 1999 amendments' six-month grace

period, the three-year limit on filing drawback claims was left undisturbed. *Aectra*, 565 F.3d at 1370.

### D.  This Court's Decision in *Aectra*

In 2009, this court issued its opinion in *Aectra*, which dealt with issues similar to this case. Like Shell, the importer in *Aectra* timely filed drawback claims of its import duties without any reference to taxes or fees, within three years of its export of substitute petroleum derivatives. 565 F.3d at 1367. After Customs liquidated the importer's drawback entries and refunded the requested import duties in full, the importer filed protests and for the first time sought drawback of taxes and fees more than three years after the date of exportation. *Id.* at 1368. Customs denied the importer's protests and the importer contested the denial at the CIT, where the importer's arguments were rejected and Customs's denials of the protests sustained. *Id.*

This court affirmed, noting that the importer offered "no explanation for why it did not include protective claims for [taxes and fees] in its . . . drawback claims other than its belief that such claims would not be successful at the administrative level." *Id.* at 1367. We ultimately held that the importer was not entitled to relief because it failed to claim drawback of taxes and fees within the statutory three-year period within which all drawback claims must be filed. *Id.* at 1375.

### E.  Procedural History of This Case

Shell filed drawback claims associated with the imports at issue in 1995 and 1996. These claims sought drawback only as to the import duties that Shell had paid. Specifically, as the CIT found, "each 'Drawback Entry' form (Customs Form 7539) that Shell filed with Customs required Shell to state its 'net claim' specifying the precise

sum that it sought." *Shell Oil Co.*, 781 F. Supp. 2d at 1318. Shell was found not to have included an express request for HMT and ET in the "net claim" figure that Shell provided on each of the drawback entry forms that it filed with Customs. *Id.* Based on these representations on the forms, Customs refunded 99% of the import duties as requested. *Id.*

After the statutory three-year period for the filing of drawback claims had expired, on November 7, 1997, Shell filed protests with Customs, seeking drawback as to HMT and ET payments that Shell had made in connection with the imports at issue. *Id.* Customs denied Shell's protests on December 3, 1997, stating:

> Under provisions of 19 U.S.C. § 1313(b) & (p) drawback is allowed upon Customs duty paid on imported merchandise. [HMT] . . . is an incidental expense incurred upon a vessel entering a harbor. The HMT is not incurred as a result of the importation of merchandise but simply imposed for the use of the harbor. The fee is collected by U.S. Customs for the benefit of the Army Corps of Engineers.

Protest No. 5301–97–100421 (Dec. 3, 1997).

On May 20, 1998, Shell filed a summons at the CIT contesting Customs's denial of the HMT and ET drawback claims. The parties filed cross-motions for summary judgment, and on June 20, 2011, the CIT held that Shell's claims for drawback of HMT and ET were time barred. *See Shell Oil Co.*, 781 F. Supp. 2d at 1339-40. The CIT found that the amendments to the drawback statute did not aid Shell and futility did not toll the statutory time period. Shell appeals the CIT's decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## II.  DISCUSSION

This court reviews a grant of summary judgment by the CIT "for correctness as a matter of law, deciding de novo the proper interpretation of the governing statute and regulations as well as whether genuine issues of material fact exist." *BMW Mfg. Corp. v. United States*, 241 F.3d 1357, 1360 (Fed. Cir. 2001) (quoting *Texaco Marine Servs., Inc. v. United States*, 44 F.3d 1539, 1543 (Fed. Cir. 1994) (internal citation omitted)).  Where the facts are undisputed, application of the appropriate legal standard to those facts is properly a question of law that we review *de novo*. *Former Emp. of Sonoco Prods. Co. v. Chao*, 372 F.3d 1291, 1295 (Fed. Cir. 2004).  When Congress has not directly addressed the precise question of statutory interpretation at issue, we give deference to Customs's regulations interpreting portions of a statute that are silent or ambiguous as to that issue.  *United States v. Haggar Apparel Co.*, 526 U.S. 380, 392 (1999) (citing *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)).

Shell's drawback claims for HMT and ET are not timely.  The pertinent facts in this case are undisputed.  Shell initially filed timely drawback claims for a refund of its import duties only.  Customs paid Shell's drawback claims in full, refunding 99% of the import duties as requested.  More than three years after its export of substitute petroleum derivatives, Shell filed protests with Customs, for the first time, seeking drawback on its HMT and ET payments.

Shell nevertheless avers that the HMT and ET drawback claims were timely under the 1999 and 2004 amendments.  Appellee, the United States, ("Government") responds, arguing that Shell raises many of the same defenses we rejected in *Aectra*.  The gravamen of the

Government's contention is that Shell's HMT and ET drawback claims were filed outside the three-year statutory window, and therefore, abandoned. As a result, the sole inquiry in this case concerns the propriety of Shell's seemingly stale drawback claims as to HMT and ET under 19 U.S.C. § 1313.

As an initial matter, drawbacks are a privilege, not a right. *United States v. Allen*, 163 U.S. 499, 504 (1896); *see Swan & Finch Co. v. United States*, 190 U.S. 143, 146 (1903) ("Being a governmental grant of a privilege or benefit it is to be construed in favor of the government and against the party claiming the grant."). Drawbacks "do not compensate for duty overpayments, but instead help enforce the United States' policy of 'encourag[ing] domestic manufacture of articles for export and . . . allow[ing] those articles to compete fairly in the world marketplace.'" *Hartog Foods Int'l, Inc. v. United States*, 291 F.3d 789, 793 (Fed. Cir. 2002) (brackets in original) (citations omitted). As such, the burden is on the party seeking drawback to show that an amount certain is eligible for refund. Placing the burden on Customs to determine the maximum permissible amount for refund in a drawback claim would "create an untenable administrative burden for Customs in its processing of drawback claims." *Aectra*, 565 F.3d at 1373 (citation omitted). In addition, "allowing claimants to submit claims piecemeal after the three-year completion window has passed would detract from the ability of Customs to 'effectively carry out its duties,' including preventing circumvention of the three-year statutory limit of 19 U.S.C. § 1313(r)(1)." *Id.* (internal citation omitted). With this backdrop, we examine Shell's contentions.

Shell first contends that its drawback claims were timely under the 1999 amendments' six-month re-opened period of limitations because Shell was not required to

resubmit a drawback claim during that six-month window when Customs had already rejected the claims at issue on the merits. This court in *Aectra* observed that the effect of the 1999 amendments was to "creat[e] a six-month grace period in which otherwise untimely claims could be filed or re-filed to obtain relief." *Id.* at 1370. Like the CIT, we hold that the plain language of the 1999 amendments requiring "a drawback claim [be] *filed* within 6 months *after* the date of the enactment of those amendments[,] refutes any suggestion that Shell's untimely, previously-filed and denied protests sufficed to protect whatever rights to drawback of HMT and ET" that Shell may have had. *Shell Oil Co.*, 781 F. Supp. 2d at 1331 (quotation omitted). The undisputed fact remains that Shell failed to raise issues of drawback related to HMT and ET within the three-year statutory window, and those claims were not *filed after* the enactment and during the grace period of the 1999 amendments.[5]

Shell also argues that re-filing its HMT and ET drawback claims would have been futile because Customs had a policy of denying drawback claims for HMT and ET. Shell's futility argument and its reliance on *Warren* are unpersuasive. To begin, "futility does not excuse the failure to file a proper claim for limitations purposes" because a "claimant is generally required to file a complete and specific claim within the limitations period, even if the government authority to [which] the claim is

---

[5] Shell attempts to distinguish this case from our decision in *Aectra* by arguing that, unlike the importer in *Aectra*, Shell's claims and protests were filed and denied on the merits prior to the 1999 amendments. However, this distinction is without consequence. As discussed, the 1999 amendments required claims to be filed or re-filed after the enactment of the amendments. It is undisputed that no such filing was undertaken in this case.

presented is certain to dispute the validity of the claim." *Aectra*, 565 F.3d at 1373. Indeed, Shell does not deny that the "issue of the recoverability of drawback on taxes and fees such as HMT and ET already had been percolating within the industry and the customs and international trade community for some time." *Shell Oil Co.*, 781 F. Supp. 2d at 1327. As the CIT recognized, "Shell itself raised the issue of drawback of taxes and fees such as HMT and ET at least as early as June 1996, and then again in November 1997, when it filed the protests at issue" in this case. *Id.*

*Warren* does not imply otherwise. *See* 341 F.3d at 1356. In that case, the importer paid duties, HMT, and ET on imported petroleum, and later exported drawback-eligible substitute merchandise. *Id.* at 1349. Like Shell, the importer timely submitted drawback claims for import duties, and failed to include in those claims an express request for HMT or ET. *Id.* at 1349-50. Shortly thereafter and unlike the facts in this case, the importer in *Warren* filed a protest seeking drawback of HMT and ET *within three years of the date of export. Id.* at 1349 (emphasis added). Customs denied the protest on the merits. *Id.* Addressing the specific inquiry of whether the CIT had jurisdiction over the denial of the importer's protest, we held that the CIT properly exercised jurisdiction despite the fact that the HMT and ET requests were first made by protest. *Id.* at 1351. In particular, we found that the importer was not required to engage in the futile exercise of re-filing new claims for HMT and ET in light of Customs's previous denial of recovery of those taxes because 28 U.S.C. § 1581(a) (2000) required only a "denial of a protest" for jurisdictional purposes. *Id.*

Accordingly, as we observed in *Aectra*, *Warren* "rested on jurisdictional grounds inapplicable here and consequently it was unnecessary for the *Warren* court to ad-

dress the effect of § 1313(r)(1) [which imposed the three-year limitations period] on those refund requests." *Aectra*, 565 F.3d at 1374 (brackets in original) (internal quotation omitted). Moreover, in *Warren*, the importer filed its drawback claims as to HMT and ET within the three-year statute of limitations, and therefore, that case does not suggest that a party may, by arguing futility, be excused from the statutory time period. Hence, because Shell failed to act during the six-month grace period, the 1999 amendments are inapplicable in this case.

Next, Shell argues that given the legal framework that existed over the course of the underlying dispute, Shell substantially complied with the steps necessary to claim timely drawback for the HMT and ET payments. Specifically, Shell contends that the then-existing regulation did not require "correct calculation" of the amount of drawback due as part of a complete drawback claim. Because no such explicit drawback claims were required, Shell argues that it substantially complied with the then-existing regulations by raising the underlying circumstances to support drawback for HMT and ET. As the CIT found, however, changes to the applicable regulation do not negate the fact that Shell failed to make or preserve any claim for HMT or ET within the three-year statutory window. *See Shell Oil Co.*, 781 F. Supp. 2d. at 1326.

Shell did not indicate that it wished to seek drawback of HMT and ET until its protests, which were filed outside the mandatory statutory three-year window. Shell's argument seems to be that its timely filed claims for drawback of import duties somehow implicitly included claims for drawback of HMT and ET. Such a position is not viable because Customs was not on notice of any claims for HMT or ET within the statutory period. Although Shell contends that Customs had notice, merely

setting forth a claim for drawback of import duties does not sufficiently make or preserve a claim for taxes and fees like HMT and ET.

In particular, Shell contends that the regulation in existence at the time of Shell's claims did not require an express request for HMT or ET, as did the 1998 regulations we analyzed in *Aectra*. *See Aectra*, 565 F.3d at 1372 (interpreting the "correctly calculate" requirement recited in the 1998 regulation, 19 C.F.R. § 191.51(b) (1998), to mean that a claimant must include an accurate calculation of the entire amount that it seeks to be refunded under the drawback statute). Shell, thus, argues that its omission of the HMT and ET payments was not fatal and that *Aectra*'s discussion as to this issue need not apply. Nevertheless, the fact that certain regulations were in flux at the time the claims were filed does not excuse Shell's nonfeasance.

Moreover, Shell fails to recognize that it sought accelerated payment of its drawback claims. *See* 19 C.F.R. § 191.72 (1984). A drawback claimant seeking accelerated payment is required to include "a computation of the amount due." *See id.* As the CIT cogently noted, "to the extent that the pre-1998 regulations did not expressly require a correct calculation as part of a 'complete' drawback claim, the same certainly cannot be said of a request for accelerated payment of drawback." *Shell Oil Co.*, 781 F. Supp. 2d at 1325 n.15. Shell therefore had the responsibility of computing the total amount due as part of a complete drawback claim. There is no dispute that the total amount due as indicated in Shell's original drawback claims did not include HMT and ET payments.

Regardless, Shell's focus on whether the pre-1998 regulations lacked explicit requirements to list taxes and fees as part of the total amount is misplaced because, as

discussed above, Customs does not bear the burden to determine the maximum permissible amount for a drawback claim. Rather, it is on the claimant to place Customs on notice as to the specific amount it is seeking for a refund. As a result, Shell, at a minimum, was required to place Customs on notice that it was seeking drawback for HMT and ET. Because Shell sought accelerated payment, Shell had the additional responsibility of submitting "a computation of the amount due," including payments for HMT and ET. Shell failed to provide such notice in this case. Hence, Shell's contention that it substantially complied with the statute does not salvage its untimely claims.[6]

Lastly, Shell avers that it qualifies under the 2004 amendments' effective date provision, which deems timely any drawback entry filed before the date of enactment if the liquidation of the entry was not final on that date. Because the 2004 amendments allow *any* drawback claim that is not final to remain open, Shell argues that the amendment must apply to its drawback claims for HMT

---

[6] To the extent Shell avers that the 1998 regulations created a requirement which did not exist previously, we agree with the CIT and conclude that the 1998 regulatory amendments merely clarified the requirements for what was already required for a proper drawback claim. *Shell Oil. Co.*, 781 F. Supp. 2d at 1326 n.15 ("[E]ven before the 1998 regulatory amendments, one of the 'documents necessary to complete a drawback claim' was a completed drawback entry form—Customs Form 7539 . . . . That 'drawback entry' form required that an importer state its 'net claim' (that is, the monetary amount of drawback sought), and was required to be signed and certified by an authorized representative. Accordingly, even before the 1998 'clarify[ing]' amendments to the regulations, an importer filing a 'complete' drawback claim was obligated to state for Customs the 'net claim' that it sought, as a certain and specific sum.").

and ET. The 2004 amendments applied only prospectively, and to "not yet finally liquidated [entries]" that "already included a timely protective request" for taxes and fees. *Aectra,* 565 F.3d at 1369-71 (recognizing that the 2004 amendments were not intended to waive the normal three-year limit imposed by the drawback statute). In this case, it is undisputed that Customs liquidated the drawback entry that Shell filed, which did not include a timely protective request for taxes and fees. The later protests as to HMT and ET, as discussed above, were not timely, and as a result, were not protected requests. Accordingly, the 2004 amendments do not apply in this case.

### III. CONCLUSION

Shell's drawback claims for HMT and ET are time barred, and the 1999 and 2004 amendments do not aid Shell in reviving those claims. Like the importer in *Aectra*, Shell's failure to file protective claims for HMT and ET is fairly attributed to Shell's inaction. Accordingly, we affirm the CIT's decision sustaining Customs's denial of Shell's protests.

**AFFIRMED**