# United States Court of Appeals for the Federal Circuit

2008-1356

AECTRA REFINING AND MARKETING, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Michael F. Mitri, Phelan & Mitri, of Norwalk, Connecticut, argued for plaintiff-appellant. With him on the brief was John J. Galvin, Galvin & Mlawski, of New York, New York.

Tara K. Hogan, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director.

Appealed from: United States Court of International Trade

Senior Judge Nicholas Tsoucalas

# United States Court of Appeals for the Federal Circuit

2008-1356

AECTRA REFINING AND MARKETING, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade in case no. 04-00354, Senior Judge Nicholas Tsoucalas.

_____

DECIDED:  May 8, 2009

_____

Before MICHEL, Chief Judge, MAYER and DYK, Circuit Judges.

DYK, Circuit Judge.

Aectra Refining and Marketing, Inc. ("Aectra") unsuccessfully sought a refund from United States Customs and Border Protection ("Customs") of import taxes and fees paid on products that were subsequently used to produce exported goods.  Such refund claims are known as claims for "drawback."  Aectra then filed suit in the Court of International Trade, which rejected Aectra's drawback claim as untimely.  The trade court held that the three-year limitations period imposed by 19 U.S.C. § 1313(r)(1) had not been suspended by 2004 legislation and that Aectra had not completed its claim within the three-year limitations period because it had not timely provided Customs with

a calculation of the taxes and fees it sought.  Aectra Ref. & Mktg. Inc. v. United States, 533 F. Supp. 2d 1318, 1326 (Ct. Int'l Trade 2007).  We affirm.

BACKGROUND

Between January 1987 and June 1997, Aectra imported into the United States certain petroleum products upon which customs duties, Merchandise Processing Fee ("MPF"), and Harbor Maintenance Tax ("HMT") were paid.[1]  Aectra exported drawback-eligible finished petroleum products between May 1987 and December 1997.  In general, under the current statute, Customs is required to provide a refund (drawback) of 99% of "any duty, tax, or fee imposed under Federal law upon entry or importation" of imported merchandise if that merchandise (or a "commercially interchangeable" substitute) is subsequently "exported, or . . . destroyed under customs supervision; and . . . is not used within the United States before such exportation or destruction."  19 U.S.C. § 1313(j), (p) (2006).  Aectra's exported petroleum products always qualified for drawback (even under earlier versions of the statute), and under the current statute, MPF and HMT (each of which is a "duty, tax, or fee imposed . . . upon entry or importation") are also eligible to be refunded.  However, the drawback eligibility of MPF and HMT (as opposed to customs duties) under the earlier statute was disputed at the time of Aectra's exports.  The question is whether Aectra made a timely claim for refund of MPF and HMT.

By statute, claims for drawback generally must be filed and completed within a three-year limitations period accruing from the date of export:

---

[1]    In its Complaint, Aectra makes passing reference to an additional category of fees and taxes, the Environmental Tax imposed under 26 U.S.C. § 4611.  On appeal the government contends, and Aectra apparently does not dispute, that there is no evidence that Aectra actually paid that tax on the goods in question.

A drawback entry and all documents necessary to complete a drawback claim, including those issued by the Customs Service, shall be filed or applied for, as applicable, <u>within 3 years after the date of exportation</u> or destruction of the articles on which drawback is claimed . . . . Claims not completed within the 3-year period shall be considered abandoned. No extension will be granted unless it is established that the Customs Service was responsible for the untimely filing.

19 U.S.C. § 1313(r)(1) (2006) (emphasis added); 19 C.F.R. § 191.51(e)(1) (2008). The statute requires timely filing of both the "drawback entry," which is defined by regulation as "the document containing a description of, and other required information concerning, the exported or destroyed article on which drawback is claimed," 19 C.F.R. § 191.2(k), and all documents necessary to complete the "drawback claim," which is "the drawback entry and related documents required by regulation which together constitute the request for drawback payment," <u>id.</u> § 191.2(j). Customs has promulgated regulations addressing what is necessary to "complete" a claim; under the regulations, a claimant must supply various documents and certificates specified in 19 C.F.R. § 191.51(a) and "correctly calculate the amount of drawback due" under <u>id.</u> § 191.51(b)(1). Claims for drawback may be altered or amended prior to liquidation of the drawback entry ("liquidation" being the final calculation by Customs of drawback due on an entry, <u>see</u> <u>id.</u> § 159.1), provided that the amendment is made within the three-year limitations period. <u>Id.</u> § 191.52(c).

Between August 1997 and June 1998, Aectra timely filed ten entries claiming drawback of the customs duties paid on the petroleum products.[2] For the "total drawback claimed" on each of the ten drawback entry forms, Aectra listed only the specific amount of customs duty paid on that entry. None of the ten forms included a request for drawback of the MPF or HMT paid on that entry or any calculations indicating the amount of MPF or HMT sought. Aectra states that it did not include calculations for MPF or HMT because Customs regulations at the time provided that neither MPF nor HMT was eligible for drawback under the statute.[3]

Although the regulations did not allow MPF and HMT claims, Aectra admits that it was aware that Customs's position regarding the recoverability of MPF and HMT was being actively challenged in 1997 and 1998. See, e.g., Textport Oil Co. v. United States, 1 F. Supp. 2d 1393 (Ct. Int'l Trade 1998), rev'd, 185 F.3d 1291 (Fed. Cir. 1999). Aectra offers no explanation for why it did not include protective claims for MPF and HMT in its ten drawback claims other than its belief that such claims would not be successful at the administrative level. Subsequent to the original filing of those claims (but at a time when Aectra's claims could have been timely amended or re-filed), in July 1999 a panel of this court in Textport Oil Co. v. United States, 185 F.3d 1291, 1296 (Fed. Cir. 1999), held that MPF was recoverable but HMT was not. However, efforts continued in other cases to secure en banc reconsideration of Textport's holding as to

---

[2] The first five entries were later lawfully re-filed in December 1999 pursuant to a temporary suspension of the three-year limitations period accompanying a June 25, 1999 amendment to the drawback statute, as discussed below. See Miscellaneous Trade and Technical Corrections Act of 1999, Pub. L. No. 106-36, § 2420(e), 113 Stat. 127, 179 ("1999 Trade Act").

[3] Specifically, 19 C.F.R. § 191.3(b) (1998), entitled "Duties and fees subject or not subject to drawback," stated that "Duties and fees not subject to drawback include: (1) Harbor maintenance [tax] . . . [and] (2) Merchandise processing fee."

HMT, see, e.g., George E. Warren Corp. v. United States, 341 F.3d 1348, 1351–52 (Fed. Cir. 2003), and efforts to change the Texport decision as to HMT legislatively proceeded as well. In 2004, Congress amended 19 U.S.C. § 1313(j) to permit drawback of HMT. Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. No. 108–429, § 1557(b), 118 Stat. 2434, 2579 ("2004 Trade Act").[4] Aectra contends that the amendment applies to the claims in question.

Although Aectra never sought to formally amend its claims within the three-year period, Aectra itself recognized that a claim could be filed even before the 2004 Trade Act (allowing recovery of HMT) was enacted on December 3, 2004. On February 2, 2004, Aectra filed a protest contesting Customs's failure to refund the MPF and HMT paid on the ten entries.[5] On or about February 6, 2004, Customs denied the protest without elaboration. Aectra understood the grounds for denial to be its failure to include a timely request for HMT and MPF in its original filings.

On July 23, 2004 (still before the statute was amended), Aectra filed a summons in the Court of International Trade under 28 U.S.C. § 1581(a), contesting the denial of its protest. Aectra ultimately offered three main theories for why Customs had incorrectly rejected the request for drawback of MPF and HMT. First, Aectra argued in

---

[4]   The revised language provides that "any duty, tax, or fee imposed under Federal law upon entry or importation" is now eligible for drawback, 19 U.S.C. § 1313(j) (2006) (emphasis added), rather than only "any duty, tax, or fee imposed under Federal law because of its importation," 19 U.S.C. § 1313(j) (2000) (emphasis added). The parties agree that the statute as amended by the 2004 Trade Act now permits drawback of HMT (which is a charge imposed upon importation, though not because of importation), in addition to customs duties and MPF. See Aectra, 533 F. Supp. 2d at 1323.

[5]   On or about November 28, 2003, Customs approved in its initial liquidation the refund of 99% of the total drawback amount sought by Aectra for each entry (i.e., 99% of the customs duties that had been paid).

2008-1356                              5

essence that the 2004 Trade Act suspended the three-year limitations period as to HMT. Second, Aectra argued that even if the three-year limitations period applied, its original drawback claims, despite their lack of an explicit request for MPF and HMT, were sufficient to include a claim for MPF and HMT. Third, Aectra argued that it was not required to file a claim for MPF and HMT because such a claim would have been futile. On cross motions for summary judgment, the trade court rejected Aectra's arguments and granted the government's motion, affirming Customs's denial of the claim. Aectra, 533 F. Supp. 2d at 1327.

Aectra timely appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(5). "We review the Court of International Trade's grant of summary judgment de novo, including by deciding de novo the proper interpretation of governing statutes and regulations." Shinyei Corp. of Am. v. United States, 524 F.3d 1274, 1282 (Fed. Cir. 2008).

DISCUSSION

I

On appeal, Aectra contends that the 2004 Trade Act suspended the three-year limit on HMT drawback claims imposed by 19 U.S.C. § 1313(r)(1). As previously noted, prior to the 2004 amendment, § 1313(j) stated that "any duty, tax, or fee imposed under Federal law [upon imported merchandise] because of its importation . . . shall be refunded as drawback" if the merchandise is exported or destroyed unused. 19 U.S.C. § 1313(j) (2000) (emphasis added). In Texport, this court held that MPF was a "duty, tax, or fee" imposed "because of . . . importation" and therefore was eligible for drawback; in contrast, we held that HMT was not similarly subject to drawback because

it was a general charge "assessed against all shipments, regardless of whether they are imports." 185 F.3d at 1296. The 2004 Trade Act made clear that HMT was recoverable by eliminating the requirement that a charge be imposed "because of" importation, instead more broadly allowing drawback of any duty, tax, or fee imposed "<u>upon</u> entry" of merchandise. 2004 Trade Act, § 1557(a), 118 Stat. at 2579 (emphasis added). The legislative history indicates that the amendment was designed to clarify prior law that 19 U.S.C. § 1313(j) had been intended to permit recovery of HMT, <u>see</u> S. Rep. No. 108-28, at 173 (2003), and that the contrary <u>Texport</u> decision had been in error.[6]

The basis for Aectra's argument as to the timeliness of its claims is the effective date provision of the 2004 Trade Act, which provides:

> (b) EFFECTIVE DATE.—The amendments made by this section shall take effect on the date of the enactment of this Act [Dec. 3, 2004], and shall apply to any drawback claim filed on or after that date <u>and to any drawback entry filed before that date if the liquidation of the entry is not final on that date</u>.

---

[6] As noted in the report:

<u>Explanation of provision</u>

The provision amends Section 313(j) of the Tariff Act of 1930 (19 U.S.C. 1313(j)) to clarify that the Harbor Maintenance Tax (HMT) is a fee eligible for drawback under the statute.

<u>Reason for Change</u>

The Committee believes that the U.S. Court of Appeals for the Federal Circuit erred in overturning the U.S. Court of International Trade's ruling . . . that Section 313(j) . . . allows drawback of the Harbor Maintenance Tax. <u>Section 313(j) allows for drawback of any duty, tax, or fee imposed under Federal law because of its importation.</u> <u>The Committee believes allowing for drawback of the Harbor Maintenance Tax is consistent with original Congressional intent</u>.

S. Rep. No. 108-028, at 173 (2003) (final emphasis added).

2004 Trade Act, § 1557(b), 118 Stat. at 2579 (emphasis added). The first clause of the provision plainly applies prospectively to claims filed after December 3, 2004, and is inapplicable to Aectra. Aectra argues that the second (emphasized) clause of the provision must be read as permitting recovery of the HMT paid on any drawback entry filed before December 3, 2004, but not finally liquidated as of that date.[7] Thus, Aectra contends that its February 2004 protest containing a claim for HMT—though made well beyond the close of the three-year limitations period—is nonetheless a timely claim.[8] Aectra urges that the trade court's contrary reading of the statute "creates an absurd result," for it "gives meaning only to the first clause," while rendering "the retroactive second clause of the effective date provision . . . superfluous." Pl.-Appellant's Br. 9, 12.

We disagree. It is first important to recognize that the 2004 Trade Act amendment was not designed to create a new right to drawback for HMT, but rather to clarify that HMT was always subject to drawback under the statute. Read in that light, it was not unreasonable to assume that Congress would limit the right to those who had previously attempted to claim it within the three-year limitations period, absent some contrary language in the statute. Nothing in the text of the statute states or suggests that it was intended to waive the normal three-year limit imposed by 19 U.S.C. § 1313(r)(1). Given that Congress is presumed to enact legislation with knowledge of

----

[7] While the entries were liquidated by Customs in 2003, the liquidation did not become final because the liquidation determination was timely protested. See 19 U.S.C. § 1514.

[8] On appeal, Aectra at points appears to suggest that the 2004 Trade Act applies to both MPF and HMT, rather than to only HMT. This court, however, had already confirmed that MPF was eligible for drawback under the pre-amendment statute several years earlier. See Texport, 185 F.3d at 1296. There is thus no basis in the 2004 Trade Act upon which to argue that it suspended 19 U.S.C. § 1313(r)(1) with regard to MPF.

the law and a newly-enacted statute is presumed to be harmonious with existing law and judicial concepts, see Cannon v. Univ. of Chi., 441 U.S. 677, 696–98 (1979), the absence of any statement that the statute was designed to modify the limitations period for drawback claims is telling.

Contrary to Aectra's argument, the Court of International Trade's reading of the statute renders no part of the text surplusage. Under the plain language of the statute, the first and second clauses of the effective date provision apply the amendments of the 2004 Trade Act to two distinct categories. The first clause applies prospectively to new drawback "claims" filed on or after December 3, 2004, which may seek drawback on exports made within the previous three years. There is no dispute that this clause does not apply to Aectra's drawback claims, which were filed before that date.

The second clause covers certain drawback "entries" filed before December 3, 2004, but not yet finally liquidated on that date. This clause applies the 2004 Trade Act's amendments to unliquidated entries that already included a timely protective request for HMT. This clause is necessary to make clear that such unliquidated entries were entitled to the benefit of the amendments, since the pre-amendment statute in effect at the time those entries would have been filed did not allow recovery of HMT. Although it is the case that Aectra's ten entries are not within this clause, the second clause of the effective-date provision is not rendered surplusage by that fact.

Moreover, when Congress intends to suspend the three-year limit imposed by § 1313(r), it has done so explicitly. Just five years before the 2004 Trade Act was passed, for example, Congress enacted the 1999 Trade Act. That statute made certain technical amendments to 19 U.S.C. § 1313(p), easing the recovery of drawback "for

petroleum products where a party other than the exporter is the importer," because the difficulty of tracing specific imported petroleum to specific exported products had "often made it economically unfeasible to seek drawback claims." S. Rep. No. 106-2, at 70 (1999) (report of the Senate Finance Committee); see 1999 Trade Act, § 2420, 113 Stat. at 178–79. Section 2420(e) of the 1999 Trade Act applied the amendments retroactively and expressly suspended the three-year limit imposed by 19 U.S.C. § 1313(r), creating a six-month grace period in which otherwise untimely claims could be filed or re-filed to obtain relief under the amended statute:

> EFFECTIVE DATE.—The amendments made by this section shall take effect as if included in the amendment made by . . . the [1993] North American Free Trade Agreement Implementation Act. For purposes of section 632(b) of that Act [providing that the NAFTA Implementation Act amendments applied to any entry filed after 1988 or unliquidated as of the Act's passage], the 3-year requirement set forth in section 313(r) of the Tariff Act of 1930 shall not apply to any drawback claim filed within 6 months after the date of the enactment of this Act for which that 3-year period would have expired.

1999 Trade Act, § 2420(e), 113 Stat. at 179 (emphasis added).

We agree with the Court of International Trade that the 2004 Trade Act did not eliminate the three-year claim completion limit imposed by 19 U.S.C. § 1313(r)(1).

II

Alternatively, Aectra argues that § 1313(r)(1) requires only that a "drawback entry and all documents necessary to complete a drawback claim" be submitted within three years. The statute does not expressly require that a calculation of the amount of tax and fee drawback claimed be submitted along with the entry document in order to "complete" a claim. Aectra thus maintains that even if the three-year limit does apply, Aectra's "drawback claims for import duty recoveries can be found 'complete' for

§ 1313(r)(1) purposes" because the drawback entries themselves were timely filed within three years of export. Pl.-Appellant's Br. 23.

Aectra is correct that the drawback statute itself does not explicitly state that a calculation of taxes and fees sought must be included with the drawback entry as one of the "documents necessary to complete a drawback claim." 19 U.S.C. § 1313(r)(1). The payment of drawback, however, is expressly conditioned—by statute—upon compliance with regulations promulgated by the Secretary of the Treasury. Id. § 1313(l); see also id. § 1624; United States v. Lockheed Petroleum Servs., Ltd., 709 F.2d 1472, 1474 (Fed. Cir. 1983). One such regulation, 19 C.F.R. § 191.51 (1998), is directly applicable here. At the time the relevant entries were filed, that regulation provided:

> § 191.51 Completion of drawback claims.
>
> (a) General. (1) Complete claim. Unless otherwise specified, a complete drawback claim under this part shall consist of the drawback entry on Customs Form 7551 . . . and evidence of exportation or destruction under subpart G of this part.
> . . .
> (b) Drawback due. Drawback claimants are required to correctly calculate the amount of drawback due. The amount of drawback requested on the drawback entry is generally to be 99 percent of the import duties eligible for drawback. (For example, if $1,000 in import duties are eligible for drawback less 1 percent ($10), the amount claimed on the drawback entry should be for $990. Claims exceeding 99 percent (or 100% when 100% of the duty is available for drawback) will not be paid until the calculations have been corrected by the claimant.) Claims for less than 99 percent (or 100% when 100% of the duty is available for drawback) will be paid as filed, unless the claimant amends the claim in accordance with § 191.52(c).

19 C.F.R. § 191.51 (1998) (final emphasis added).[9]   Under the "correctly calculate"

requirement of paragraph (b) of the regulation, a "complete" claim for purposes of the

three-year limit of 19 U.S.C. § 1313(r)(1) must include a correct calculation of the

amount of drawback due.

The question, therefore, is what a "correct" calculation entails.  In Aectra's view,

because the Customs regulations in effect at the time specified that both MPF and HMT

were ineligible for drawback, see 19 C.F.R. § 191.3(b) (1998), a correct calculation

required calculating only the amount of customs duties to be refunded, not the amount

of taxes and fees.[10]   It bolsters its argument by pointing out that paragraph (b) makes

mention of "duty," and contains no reference to calculation of taxes and fees.  Moreover,

Aectra reads paragraph (b) as stating that "[c]laims exceeding 99 percent" of "duties"

would be rejected, thus requiring rejection of claims for 99 percent of duties plus taxes

and fees.  Thus, Aectra argues, its ten claims were "complete" within the meaning of the

---

[9]   In 2001, Customs amended 19 C.F.R. § 191.51(b), noting that the closing parenthesis following the fourth sentence was a typographical error.  Instead, that parenthesis should have followed the third sentence, such that the third sentence would conclude "should be for $990.)"  Technical Amendments to the Customs Regulations, T.D. 01-14, 35 Cust. B. & Dec. 59, 62 (Jan. 3, 2001).  This change has no significance for present purposes.

[10]   Following Texport, 19 C.F.R. § 191.3 was eventually amended in 2001 to acknowledge that MPF was eligible for drawback.  Merchandise Processing Fee Eligible To Be Claimed as Unused Merchandise Drawback, 66 Fed. Reg. 9647, 9649 (Feb. 9, 2001); see also Merchandise Processing Fees Eligible To Be Claimed as Certain Types of Drawback Based on Substitution of Finished Petroleum Derivatives, 69 Fed. Reg. 60,082 (Oct. 7, 2004); Merhcandise [sic] Processing Fee Eligible To Be Claimed as Unused Merchandise Drawback, 67 Fed. Reg. 48,547 (July 25, 2002).  Although a new paragraph was also added as 19 C.F.R. § 191.51(b)(2) with specific information as to how to calculate the MPF drawback, the amendment did not alter the existing text imposing the basic requirement that the drawback claimant "correctly calculate the amount of drawback due."  See 19 C.F.R. § 191.51(b)(1) (2001).  No relevant further amendment has been made following passage of the 2004 Trade Act.

regulation despite the fact that they included no calculation of (and indeed made no mention of) the amounts of MPF and HMT that Aectra now claims.

We are aware of no authoritative administrative construction of the "correctly calculate" requirement of 19 C.F.R. § 191.51(b) (1998), but we think that on its face the phrase "correctly calculate the amount of drawback due" requires a claimant to include an accurate calculation of the entire amount that it seeks to be refunded under the drawback statute. The purpose of the "correctly calculate" requirement is plain enough from the face of the regulation; it is to allow Customs to carry out its mandate to process drawback claims under the statute in an efficient and accurate manner. This purpose is served by requiring a claimant to put Customs on notice of the total amount sought. It is equally clear that this purpose is defeated by allowing the untimely filing of incomplete claims. Under Aectra's theory, a claimant could submit a partial claim for duty that would be fully paid by Customs as requested, and then institute a second proceeding, perhaps years later, requesting by protest an additional amount, thereby plainly increasing the cost and complexity of processing the claim. The regulation seeks instead to promote the orderly administration of the drawback system by requiring that a complete calculation of the drawback sought be presented within the statutory period.

Indeed, during the Notice and Comment period that preceded adoption of § 191.51(b) in 1998, Customs recognized the analogous administrative problems that would be created if Customs were required on its own to make a refund of the maximum permissible amount, even if the claim were for a lesser amount. As Customs noted, "adoption of the procedure suggested . . . would create an untenable administrative burden for Customs in its processing of drawback claims." Drawback, 63 Fed. Reg.

10,970, 10,988 (Mar. 5, 1998). Likewise, allowing claimants to submit claims piecemeal after the three-year completion window has passed would detract from the ability of Customs to "effectively carry out its duties," including preventing circumvention of the three-year statutory limit of 19 U.S.C. § 1313(r)(1). Aectra, 533 F. Supp. 2d at 1326.

In short, we think the first sentence of 19 C.F.R. § 191.51(b) (1998) in effect at the time Aectra filed its claims required a correct calculation of whatever amount a claimant sought to recover, not merely a calculation of the customs duties to be refunded. The remainder of paragraph (b), which does refer specifically to duty, does not limit the requirement of the first sentence but simply discusses the calculation requirement as applied to the duty component of a drawback claim. The second sentence of (b) notes that the drawback due is "generally" to be 99 percent of the import duties eligible; it does not state an absolute rule. Likewise, the fourth sentence similarly concerns duty, stating that claims "exceeding 99 percent (or 100% when 100% of the duty is available for drawback) will not be paid until the calculations have been corrected by the claimant." Id. § 191.51(b). The better reading of these statements is that they do not limit the general requirement imposed by the first sentence of paragraph (b), which requires a claimant to properly set forth the total amount sought (from whatever category of duty, tax, or fee) as drawback.[11]

## III

Aectra argues that it was not required to make claims for MPF and HMT at the time its drawback entries were filed because such claims would have been futile.

---

[11]    In its reply brief Aectra argues that claims for MPF and HMT were "implicit" in its timely filing requesting a refund of customs duties. Pl.-Appellant's Reply Br. 11. We see no basis for such an argument.

However, futility does not excuse the failure to file a proper claim for limitations purposes. A claimant is generally required to file a complete and specific claim within the limitations period, even if the government authority to whom the claim is presented is certain to dispute the validity of the claim. In United States v. Clintwood Elkhorn Mining Co., for example, the Supreme Court held that a refund suit for a tax imposed in violation of the Export Clause, filed beyond the applicable period of limitations, was barred where the claimant had failed to first present a timely administrative claim to the Internal Revenue Service. 128 S. Ct. 1511, 1515 (2008). This was so even though there was little if any reason to believe that the claim for a refund of the tax would have been granted by the IRS. See id. at 1515, 1520; see also Frazer v. United States, 288 F.3d 1347, 1354–55 (Fed. Cir. 2002) (noting that possible futility of filing action and "considerable doubt" about viability of claims did not justify failure to satisfy statute of limitations); Boling v. United States, 220 F.3d 1365, 1374 (Fed. Cir. 2000) ("It is true that during the period between the decision in Ballam [which made the claim appear futile] and its subsequent reversal in Owen, any claim by the plaintiffs for compensation would have been difficult. However, this difficulty does not justify tolling the statute of limitations."). See generally Computervision Corp. v. United States, 445 F.3d 1355, 1363–73 (Fed. Cir. 2006) (discussing exceptions to limitations periods in the internal revenue context).

Our decision in George E. Warren, 341 F.3d at 1348, is not to the contrary. In that case, Warren paid duty, HMT, and Environmental Tax ("ET") on imported petroleum, and later exported drawback-eligible substitute merchandise. Id. at 1349. Warren timely submitted drawback claims for the duty, which Customs paid as

submitted, but failed to include in those claims an express request for HMT or ET. Id. at 1349–50. Shortly thereafter—but still within three years of the date of export—Warren filed a protest seeking drawback of HMT and ET. Id. Customs denied the protest on the merits, ruling that no additional refund would be issued on the entries because HMT was not recoverable under the drawback statute. Id.; see also George E. Warren Corp. v. United States, 201 F. Supp. 2d 1366, 1368 (Ct. Int'l Trade 2002). We held that the Court of International Trade properly exercised jurisdiction over the denial of the importer's protest despite the fact that the HMT and ET requests were first made by protest, and that Warren was not required to engage in the futile exercise of re-filing new claims for HMT and ET in light of Customs's previous denial of recovery of those taxes on the specific entries at issue. George E. Warren, 341 F.3d at 1351.

As Aectra concedes, George E. Warren "rested on jurisdictional grounds inapplicable here" and consequently "it was unnecessary for the Warren court to address the effect of § 1313(r)(1) [which imposed the three-year limitations period] on those refund requests." Appellant's Br. 24. Aectra's reliance on George E. Warren is thus misplaced, as our opinion in that case does not suggest that a party may be excused from a failure to comply with the statute of limitations by arguing futility.[12]

In any event, even if George E. Warren were viewed as relevant to the limitations issue, that case dealt with the unique circumstance in which Congress in 1999 extended the three-year statute of limitations after Customs (in acting on a protest) had denied the

---

[12] Aectra's reliance on our decision in Texport, 185 F.3d at 1291, is similarly misplaced. The issue of whether the importer's claims for HMT and MPF were timely made was not raised by Customs in that appeal, and Texport is not binding authority with regard to an issue it neither discussed nor squarely decided. See Boeing N. Am., Inc. v. Roche, 298 F.3d 1274, 1282 (Fed. Cir. 2002).

requested refunds; at most we held that under such circumstances the filing of a new claim in the extended limitations period was unnecessary since Customs already had notice of the claim.  No comparable circumstances exist here since Customs was never presented with, and therefore never addressed, Aectra's claim for HMT during the limitations period.

In sum, we agree with the Court of International Trade that a complete claim under 19 C.F.R. § 191.51(b) (1998) requires a calculation of the total amount of drawback sought even if the claim would have been rejected by Customs.  Here, Aectra did not preserve its claim for taxes and fees by timely providing Customs with a calculation of the amount sought under § 191.51(b).

IV

We turn briefly to Aectra's final argument.  Aectra notes that 19 U.S.C. § 1313(r)(1) permits an "extension" of the three-year limit when "the Customs Service was responsible for the untimely filing."  It contends that because the Customs regulations in effect at the time it filed its claims did not recognize drawback of MPF and HMT, see 19 C.F.R. § 191.3(b) (1998), "it is incontestable that Customs was responsible for any perceived 'untimely filing' of Aectra's requests for tax and fee drawback."  Appellant's Br. 28.

The provision of § 1313(r)(1) allowing extensions for Customs delay is not applicable here, as Aectra's failure to file a protective claim for taxes and fees cannot fairly be attributed to the agency.

CONCLUSION

In summary, we agree with the Court of International Trade that the 2004 Trade Act did not suspend the three-year limit imposed by 19 U.S.C. § 1313(r)(1) and that a complete claim under 19 C.F.R. § 191.51(b) (1998) requires a claimant to calculate not only the amount of duty but also the amount of taxes and fees sought as drawback. Because Aectra's drawback claims were not completed with such a calculation within three years of export of the underlying goods, Customs properly denied Aectra's February 2004 request for drawback of MPF and HMT. Accordingly, the judgment of the Court of International Trade is affirmed.

AFFIRMED

COSTS

No costs.