# United States Court of Appeals for the Federal Circuit

---

**PERFORMANCE ADDITIVES, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-2059

---

Appeal from the United States Court of International Trade in No. 1:22-cv-00044-JAR, Senior Judge Jane A. Restani.

---

Decided: February 24, 2026

---

JOHN M. PETERSON, Neville Peterson LLP, New York, NY, argued for plaintiff-appellant. Also represented by PATRICK KLEIN; RICHARD F. O'NEILL, Seattle, WA.

ALEXANDER J. VANDERWEIDE, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, JUSTIN REINHART MILLER; ALEXANDRA KHREBTUKOVA, YELENA SLEPAK, Office of the Assistant Chief Counsel, United States Customs and Border

Protection, United States Department of Homeland Security, New York, NY.

———————————

Before PROST, WALLACH, and STARK, *Circuit Judges*.

WALLACH, *Circuit Judge*.

Plaintiff-Appellant, Performance Additives, LLC, (hereinafter, "Performance") appeals from the final judgment of the U.S. Court of International Trade insofar as it denied judgment for Performance's drawback claim entry BI00004498-1.[1]  This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

This appeal requires us to perform statutory interpretation to determine the applicability of 19 U.S.C. § 1504(a)(2)*(A)* and § 1504(a)(2)*(B)* to Performance's drawback claim.    Did Customs & Border Protection (hereinafter, "Customs") act lawfully on April 30, 2021, when it liquidated Performance's drawback claim at the amount of zero drawback; or, as Performance argues, was its drawback claim "deemed" liquidated by subparagraph (A) at Performance's asserted rate, on March 10, 2021?

We hold that under the plain text of the statute, subparagraph (A) does not apply when the conditions set forth in (B) are present.    Here, the conditions of § 1504(a)(2)*(B)* were present because, inter alia, the underlying import entries were not yet final.    Thus, Performance's drawback claim was not automatically liquidated under § 1504(a)(2)*(A)*.    Given there was not a

———————————

[1] The Court of International Trade Judgement is in the record at Appx0001, and the Decision is in the record at Appx0002–20 and reported as *Performance Additives, LLC v. United States*, 705 F. Supp. 3d 1385 (Ct. Int'l Trade 2024).

"deemed" liquidation, Customs did not act unlawfully by liquidating the drawback claim.[2]

Therefore, we affirm.

## I.    BACKGROUND[3]

### A.

#### 1.

Performance filed a drawback claim on March 10, 2020. Appx0003. It was a claim for petroleum derivatives substitution drawback and identified forty-eight consumption entries for the claimed recovery of $1,328,589.84 under 19 U.S.C. § 1313(p). Appx0002–3; Opening Br. 2; Response Br. 8 & n.2.

---

[2] Performance's contention at the Court of International Trade, and here, does not concern whether Customs was correct on the merits in determining that Performance was not entitled to any drawback on its claim. Rather, Performance argues its claim had already been deemed liquidated (on March 10, 2021) by operation of law before Customs determined that the claim was not eligible for drawback. For that reason, Performance argues, Customs erred as a matter of law. Because that is the sole issue on appeal, to focus our discussion, we assume without deciding that Customs was otherwise correct on the merits.

[3] Performance asserts that the facts are undisputed. Opening Br. 2; Opening Br. 12. As explained in oral argument, the Defendant-Appellee the United States (hereinafter, "Government") agreed the facts are undisputed. Oral Arg. at 1:16–34, 17:19–51, 23:22–38 (available at: https://www.cafc.uscourts.gov/oral-arguments/24-2059_01082026.mp3).

2.

"Drawback" is defined in relevant part by Customs regulations as "the refund or remission, in whole or in part, of a customs duty, fee or internal revenue tax which was imposed on imported merchandise under Federal law because of its importation . . . ." 19 C.F.R. § 191.2(i). In general, under the statute, Customs is required to provide a drawback of up to 99% of the duties, fees, or taxes imposed on imported merchandise if that merchandise (or a commercially interchangeable substitute) is subsequently exported, used in the manufacture of articles which are subsequently exported, or when certain other specified conditions are met. 19 U.S.C. § 1313; *see, e.g.*, *Shell Oil Co. v. United States*, 688 F.3d 1376, 1379 (Fed. Cir. 2012); Appx0004; Response Br. 1. Drawbacks "do not compensate for duty overpayments, but instead help enforce the United States' policy of 'encourag[ing] domestic manufacture of articles for export and . . . allow[ing] those articles to compete fairly in the world marketplace.'" *Shell Oil*, 688 F.3d at 1382 (alteration in original) (quoting *Hartog Foods Int'l, Inc. v. United States*, 291 F.3d 789, 793 (Fed. Cir. 2002)). "[D]rawbacks are a privilege, not a right." *Id.*

"Drawback claim" means "the drawback entry and related documents required by regulation which together constitute the request for drawback payment." 19 C.F.R. § 191.2(j). Given the nature of a drawback claim, there are two relevant sets of "entries." *Ford Motor Co. v. United States*, 44 F. Supp. 3d 1330, 1335 (Ct. Int'l Trade 2015). One is the "drawback entry," filed some time after importation, and which regulations define as: "the document containing a description of, and other required information concerning, the exported . . . article on which

drawback is claimed." 19 C.F.R. § 191.2(k).[4] The other is the "import entry" or entries (also known as the "consumption entry" or entries) filed with Customs at the time of importation. *Ford*, 44 F. Supp. 3d at 1335. Import entries underlie, and are covered by, drawback claims. *Id.*

Our recent decision in *Midwest-CBK* provided this background discussion of import entries.

> The importer of record for merchandise, with a few exceptions, is required to submit "entries" for that merchandise to [Customs]. *See* 19 U.S.C. § 1484(a). An "entry" means the "documentation or data required . . . to be filed with [Customs] . . . to secure the release of imported merchandise from [Customs'] custody, or the act of filing that documentation." 19 C.F.R. § 141.0a(a). Entries must undergo "liquidation" at the time merchandise is brought into the United States. *See* 19 U.S.C. § 1504. "Liquidation means the final computation or ascertainment of duties on entries . . . ." 19 C.F.R. § 159.1. . . . The usual rule is that, absent a proper extension of the liquidation deadline, "an entry of merchandise . . . not liquidated within 1 year . . . shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted by the importer

---

[4] "Technically, a 'drawback entry' is the form that a drawback claimant files to request payment of drawback, and is but one part of a 'drawback claim.'" *Ford*, 44 F. Supp. 3d at 1335 n.8 (quoting 19 C.F.R. § 191.2(j)–(k)). The terms "drawback claim" and "drawback entry" are sometimes used interchangeably. *See id.* For clarity, the term "drawback claim" is used generally throughout this Opinion.

> of record." 19 U.S.C. § 1504(a)(1). The Secretary of the Treasury is permitted to extend the liquidation deadline if "the information needed for the proper appraisement or classification of the . . . merchandise . . . is not available to the Customs Service." 19 U.S.C. § 1504(b)(1). Customs is permitted to obtain up to three such one-year extensions. 19 C.F.R. § 159.12(e).

*Midwest-CBK, LLC v. United States*, 163 F.4th 1365, 1368–69 (Fed. Cir. 2026) (footnote omitted).

3.

As of March 10, 2021, one year after Performance filed its drawback claim, the import entries underlying the drawback claim had all liquidated—the latest of which were liquidated on November 27, 2020—but they were not all "final." Appx0027; Response Br. 8; Oral Arg. at 4:45–5:12. Generally, 180 days must pass before a liquidated import entry is finalized, so the liquidation of some of the designated import entries did not become final until May 26, 2021 (i.e., 180 days from November 27, 2020). Appx0027; Response Br. 14–15 (citing Appx0015).

On April 30, 2021, Customs liquidated the drawback claim at the amount of zero drawback. Response Br. 8; Appx0013; Oral Arg. at 1:16–34, 17:19–51, 23:22–38. Performance protested. Appx0004. Performance then commenced the action at the Court of International Trade. The Court of International Trade issued its Opinion and Final Judgment on May 31, 2024, in which it denied Performance's cross-motion for summary judgment, granted the Government's cross-motion for summary judgment, and denied judgment for drawback claim, entry BI00004498-1. Appx0019–20; Appx0001. The Court of International Trade concluded that because the import entries underlying Performance's drawback claim "had not

been liquidated and become final within one year of the filing of the drawback claim, subparagraph (A) did not apply." Appx0016. Performance appealed to this Court.

## II.    STANDARD OF REVIEW

### A.

We review the Court of International Trade's decision granting summary judgment "without deference." *Ford Motor Co. v. United States*, 157 F.3d 849, 854 (Fed. Cir. 1998). We review its interpretation of statutes de novo. *Midwest-CBK*, 163 F.4th at 1369. We review factual findings of the Court of International Trade for clear error. *StoreWALL, LLC v. United States*, 644 F.3d 1358, 1362 (Fed. Cir. 2011).

## III.    DISCUSSION

### A.

#### 1.

To interpret the statute, we first turn to its text. *See* 2A Sutherland Statutes & Statutory Construction § 46:1 (7th ed. Nov. 2025 update) ("[T]he meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms." (second alteration in original) (citation omitted)). The deemed liquidation of drawback claims under 19 U.S.C. § 1504(a)(2)*(A)* and § 1504(a)(2)*(B)* is at the core of this appeal, and so both those subparagraphs are quoted below.

**§1504. Limitation on liquidation**

**(a) Liquidation**

**. . . .**

**(2) Entries or claims for drawback**

**(A) In general**

Except as provided in subparagraph (B) . . . , unless an entry or claim for drawback is extended under subsection (b) or suspended as required by statute or court order, an entry or claim for drawback not liquidated within 1 year from the date of entry or claim shall be deemed liquidated at the drawback amount asserted by the claimant or claim. Notwithstanding section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated.

**(B) Unliquidated imports**

An entry or claim for drawback whose designated or identified import entries have not been liquidated and become final within the 1-year period described in subparagraph (A), . . . shall be deemed liquidated upon the deposit of estimated duties on the unliquidated imported merchandise, and upon the filing with the Customs Service of a written request for the liquidation of the drawback entry or claim. Such a request must include a waiver of any right to payment or refund under other provisions of law. The Secretary of the Treasury shall prescribe any necessary regulations for the purpose of administering this subparagraph.

19 U.S.C. § 1504(a)(2)(A), (a)(2)(B).

Subparagraph (B) hinges on import entries. Subparagraph (B) applies to drawback claims with import entries that: one, "have not been liquidated," and, two, "have not . . . become final."  19 U.S.C. § 1504(a)(2)(B). When subparagraph (B) applies, a drawback claimant has steps they may take, upon which, the drawback claim shall

be deemed liquidated. These steps include: "the deposit of estimated duties on the unliquidated imported merchandise, and . . . the filing with the Customs Service of a written request for the liquidation of the drawback entry or claim." *Id.* It is undisputed Performance did not take all of the steps in subparagraph (B). *E.g.*, Oral Arg. at 8:15–32, 11:12–28; Response Br. 27 & n. 5; Appx0013.

2.

By its own terms, subparagraph (A) applies "[e]xcept" under certain conditions such as,[5] relevant here: when subparagraph (B)'s conditions are present. That subparagraph (B) would apply to the exclusion of subparagraph (A), flows from the text of the two subparagraphs. Certainly, § 1504(a)(2)(A) generally provides that a claim for drawback is deemed liquidated after one year of the claim date, but it does so by beginning that it operates: "Except as provided in subparagraph (B) . . . ." 19 U.S.C. § 1504(a)(2)(A); *see* Response Br. 13.

The Supreme Court has noted that "[t]housands of statutory provisions use the phrase 'except as provided in . . .' followed by a cross-reference in order to indicate that one rule should prevail over another in any circumstance in which the two conflict." *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 16 (2020) (citation omitted).

Nonetheless, Performance argues that subparagraph (A) is freestanding and independent from every other part of the statute. Performance asserts "there is no specific connector which would import the conditions

---

[5] Subparagraph (C) (i.e., 19 U.S.C. § 1504(a)(2)(C)), for drawback claims filed before December 3, 2004, and subsection (b) (i.e., 19 U.S.C. § 1504(b)), for the Secretary of the Treasury to extend for a limited time the period in which to liquidate, are not at issue in this appeal.

10                          PERFORMANCE ADDITIVES, LLC v. US

of 19 U.S.C. § 1504(a)(2)(B) into § 1504(a)(2)(A)."  Reply Br. 13.  That is mistaken in light of subparagraph (A)'s "[e]xcept" clause.

Performance argues that subparagraph (B) merely describes a non-exclusive alternative to subparagraph (A), but we disagree.  Congress created "a two-track framework"—"two avenues for eligible unliquidated drawback claims to become deemed liquidated a year after their filing," but these are exclusive avenues.  Response Br. at 11, 14.  The text of the statute provides for circumstances—such as this one—in which one subparagraph prevails over the other.  Performance's argument that subparagraph (B) could be non-exclusive to subparagraph (A) is premised on its mistaken argument that under (B), "deemed liquidation" may occur before the one-year period set out in § 1504(a)(2)(A).  Opening Br. 17–18; Reply Br. 12; *see also* Reply Br. 16; Oral Arg. at 8:32–9:26.  This is contradicted by the text of subparagraph (B) stating in relevant part: a "claim for drawback whose . . . import entries have not . . . become final *within the 1-year period described in subparagraph (A)*"—(i.e., within 1 year from the date of the drawback entry or claim)—"shall be deemed liquidated upon the" completion of certain steps with Customs. 19 U.S.C. § 1504(a)(2)(B) (emphasis added); *see also Ford*, 44 F. Supp. 3d at 1344.

We hold, in our de novo review of the statute, subparagraph (B) cannot be triggered until at least the end of the 1-year period set out in subparagraph (A).  We also note that the Court of International Trade held the same, Appx0016 n.12 ("[T]he availability of the elective subparagraph (B) procedure cannot arise until after the close of the one-year period following filing of the claim."), and the Government argued the same, Oral Arg. at 21:49–23:12.

## B.

Policy supports this interpretation of the text.[6]  We agree with the way the Court of International Trade explained this policy point as: the interpretation "makes sense because Customs knows what drawback is owed on the consumption entries only when they are final." Appx0016.  The Government, too, argues that until import entries are final, "drawback claims covering those entries are not ripe for liquidation under subparagraph (A)." Response Br. 20.  By establishing drawback claims cannot be deemed liquidated at the drawback amount asserted by the claimant or claim until the designated import entries are first finalized, the interpretation dictated by the text avoids "refunding collected duties on the same import entries twice."  Response Br. 20–21; *see also* Oral Arg. at 15:33–16:20.

## C.

Applying this interpretation to the facts here, subparagraph (B) controlled Performance's drawback claim because the drawback claim met the statutory criteria for triggering that subparagraph—it was a drawback claim "whose designated or identified import entries ha[d] not been liquidated and become final within the 1-year period."  19 U.S.C. § 1504(a)(2)(B).  Indeed, it is undisputed Performance's drawback claim referenced import entries that were liquidated but not "final." Response Br. 14–15; Appx0027; Oral Arg. at 4:45–5:12.  As

---

[6] "Even formidable policy arguments do not overcome a clear statutory directive."  2B Sutherland Statutes & Statutory Construction § 56:1 n.14 (7th ed. Nov. 2025 update) (citation omitted).  However, here, the statute's text has a plain meaning that is also consistent with public policy.

a result, subparagraph (B) applied, and subparagraph (A) was not operative.

The record shows that from March 10, 2021, until the liquidation on April 30, 2021, the drawback claim was over one year old and had non-final import entries. The Government emphasizes that while Performance's drawback claims were not automatically deemed liquidated under (A) because they fell under (B), the statute provides steps Performance could have taken to liquidate the drawback claims but did not. Response Br. 27 & n.5. The Court of International Trade similarly noted that Performance had chosen not to satisfy the steps of subparagraph (B). Appx0011; Appx0014–15.

Performance could have followed the steps to cause the drawback claim to be "deemed liquidated" under (B). 19 U.S.C. § 1504(a)(2)(B); Appx0013. Performance argues that it could not have taken steps to deem liquidate the drawback claims under subparagraph (B) because all its claim's imported entries were liquidated. Opening Br. 18; Reply Br. 14; Oral Arg. at 25:57–26:11; *see also* Oral Arg. at 8:15–32, 11:12–28. Performance's contention that its liquidated-but-not-final import entries prevented it from taking advantage of subparagraph (B) because that subparagraph allegedly lost applicability when the underlying import entries became liquidated is based on two misreadings of the statute.

First, Performance mistakenly asserts that (a)(2)(B) can only be triggered when import entries were *neither* liquidated *nor* final. Reply Br. 14. This is contradicted by the text of the statute, which provides that subparagraph (B) may be invoked for an "entry or claim for drawback whose designated or identified import entries have not been liquidated *and* become final within the 1-year period described in subparagraph (A)." 19 U.S.C. § 1504(a)(2)(B) (emphasis added). That is, (B) governs when *either* of two conditions exist: that the import entries,

either, "have not been liquidated" or, "have not . . . become final." 19 U.S.C. § 1504(a)(2)(B).

Second, Performance mistakenly asserts that its reading can be inferred from (a)(2)(B) specifying that "an applicant for deemed liquidation must make payment of '*estimated duties*'"—which Performance says is "a concept relevant only to *unliquidated* entries." Reply Br. 14 (first emphasis added). We disagree. Once an entry liquidates, related duties are still subject to protest. *See* Reply Br. 14; *see also* Oral Arg. at 20:41–21:15.[7] We interpret (a)(2)(B)'s reference to "estimated duties" to refer to non-final import duties. Even when they are solely liquidated, they are also non-final; hence, they could only be estimated.[8]

-----

[7] "Generally, the liquidation of an import entry becomes final and conclusive 180 days after the date that it liquidates, unless a protest is filed to challenge that liquidation (or some other protestable decision that CBP rendered on the entry)." Response Br. 3 (citing 19 U.S.C. § 1514(a), (c)).

[8] Our interpretation of "estimated duties" in subparagraph (B) is limited to that subparagraph. The Government points out that under 19 U.S.C. § 1505(a), estimated duties are required to be deposited on unliquidated imported merchandise at or near the time of entry of the merchandise. Indeed, the Government contends that "estimated duties were deposited on the import entries subject to Performance's drawback claim, as is required for all import entries." Response Br. 27. Estimated duties will generally already be deposited before import entries are liquidated but not yet final, and before a drawback claim covering those entries becomes eligible for deemed liquidation under any provision of section 1504(a)(2). Response Br. 24–25.

### D.

Particularly given our preceding analysis, relying on legislative history is unnecessary. Nevertheless, for completeness, we address the parties' dispute on whether the legislative history supports their position. Performance argues "[t]he law's intent is not to limit 'deemed liquidations' of drawback claims, but to expand the opportunity to obtain them." *E.g.*, Reply Br. 16. In essence, this is a maximalist reading of § 1504(a)(2)(A)—that § 1504(a)(2)(A) results in drawback claims being deemed liquidated "on the one-year anniversary of the claim's filing. Hard stop." Reply Br. 11; *see also* Reply Br. 6–7 (arguing subparagraph (B) "does not limit or condition" subparagraph (A) "in any way"). Performance asserts that drawback claims should automatically be deemed liquidated upon the one-year anniversary because, allegedly, the legislative history indicates that Congress intended to impose the same one-year limitation on liquidation of drawback claims that it had years earlier imposed on the liquidation of import entries in 19 U.S.C. § 1504(a)(1).[9] Opening Br. 13–14. For support, Performance points to a Senate Report that the 2004 Amendment would "requir[e] U.S. Customs . . . to liquidate future drawback claims within a specified period of time,

---

[9] While this appeal concerns deemed liquidation of drawback claims under 19 U.S.C. § 1504(a)*(2)(A)–(B)*, deemed liquidation of entries of merchandise for consumption (also called import entries) arise under 19 U.S.C. § 1504(a)*(1)*. Under 19 U.S.C. § 1504(a)(1), deemed liquidation of import entries occurs within 1 year from the date of entry of the merchandise (unless extended for up to three (3) one-year extensions), and it has been that way since 1978—well before the 2004 legislation that added the provisions at issue here. Opening Br. 12–13 & n.6.

*as U.S. Customs already does for merchandise entered for consumption.*"    S.  Rep.  No. 108-28  at 172–73  (2003) (emphasis added).  Performance further argues that the Government's position forces its drawback claim to exist "out of the operation of Congress' statutory framework for the liquidation of drawback entries altogether."  Reply Br. 14–15.

The  Government  disagrees  with  Performance's interpretation.       While    the    Government    notes § 1504(a)(2)(A) "echoes the singular deemed liquidation provision for import entries under section 1504(a)(1)," "the liquidation of drawback claims is not always cut and dry when the liabilities of the underlying import entries remain outstanding," which is why "Congress addressed this particular scenario unique to drawback claims with the enactment of section 1504(a)(2)(B), which sets forth certain  safeguards"  *until  "all  issues  concerning  the particular  import  entries  have  been  resolved."    See* Response Br. 30–31 (emphasis added).

The Government emphasizes that its interpretation does  not  frustrate  Congressional  purpose.    Although certain drawback claims at the one-year anniversary may be eligible for subparagraph (B), and not (A), and because of  that  certain  "statutory  and  regulatory  safety mechanisms" must be "affirmatively invoked and complied with," that does not take away that drawback claimants do have  steps  they  can  take  to  achieve  drawback  under § 1504(a)(2)(B).      Response   Br.   28–29;   Oral   Arg. at 19:00–20:32.  Thus, the Government emphasizes there is not a class of drawback claims that are not subject to any time limitation.  Response Br. 28–29.

Performance's maximalist reading of § 1504(a)(2)(A) is unpersuasive.  Ostensibly drawn from legislative history, Performance's argument is contradicted by the text of § 1504(a)(2)(A)'s  carveout  of  "[e]xcept  as  provided  in subparagraph (B)," as well as other indicia of legislative

intent. Performance's assertion that the intent was wholly to expand deemed liquidation mischaracterizes the import of the legislative history. The law's intent is clearly to provide *some* limits on deemed liquidation. Certainly, the 2004 Senate Report accompanying the relevant Amendment noted that "Existing law . . . does not require the liquidation of drawback claims within a statutory time frame. As a result, drawback claims are generally not liquidated by U.S. Customs within a reasonable period of time." S. Rep. No. 108-28 at 172 (2003). The law changed to require U.S. Customs "to liquidate future drawback claims within a specified period of time," *id.* at 173, but it does not follow, however, that any ambiguities or interpretative doubts must be resolved in favor of no limitations on deemed liquidations, as Performance's argument implies. It is undisputed Congress *expanded* the opportunities to deem liquidation, but in doing so Congress imposed limits. Notably, it imposed the "[e]xcept[ion]" for drawback claims whose import entries had not been liquidated and become final. 19 U.S.C. § 1504(a)(2)(A)–(B).

Although the legislative history indicates the 2004 Amendment causes deemed-liquidation of drawback claims "within a specified period of time," it does not provide a one-year-specific time frame to all claims, regardless of the status of the underlying import entries. S. Rep. No. 108-28 at 172–73 (2003). Even in the absence of affirmative steps by the drawback claimant or Customs, within certain specified times that are safeguarded by the statute, import entries will be deemed liquidated (under § 1504(a)(1)) and trigger a time limit for the drawback claims to be deemed liquidated in due course, too (under § 1504(a)(2)(A)). The liquidation of a drawback claim follows finality of import entries, but not necessarily immediately; with too much delay, in any event, a drawback claim will be deemed liquidated, as Congress intended.

## IV.    CONCLUSION

We have considered Performance's remaining arguments, and do not find them persuasive or do not need to reach them.  Therefore, for the foregoing reasons, the decision of the Court of International Trade is:

**AFFIRMED.**